### LEWIS PRESLEY vs. JOSEPH S. RODGERS.

The deed of trust which conveyed the slaves levied on, having been executed in another State, and never recorded in this State; held, that the rights of any party claiming under it are not prejudiced because of a failure to record it.

It has been heretofore decided that deeds of trust executed in other States are not embraced in the recording act of 1822, (Hutch. Code, 605,) and that a failure to record the same in this State, after a removal of the property into it, does not impair their validity even against bonâ fide purchasers and creditors without notice of their existence. Palmer v. Cross et al. 1 S. & M. 48; Dobbs v. Prewitt, 13 Ib. 431, cited and confirmed.

The legal title to the slaves conveyed by the deed of trust was vested in the trustees, and the interest which the wife took under the deed was entirely equitable, and the enjoyment of it by her was postponed until the death of the husband.

So soon as the husband died, the wife's right to the use and benefit of the property commenced, and this gave her a right to the enjoyment, possession, and

Presley v. Rodgers.

control of the slaves during her life; but this was an equitable right, which she could only enforce in a court of equity.

The legal title in the slaves still remained in the trustees for the purpose of enabling them to execute the trust imposed on them.

Our statute (Hutch. Code, p. 610, § 29,) declares that estates of every kind, holden or possessed in trust, shall be subject to like debts, liabilities, &c., as they would have been subject to if those persons had owned the like interest in the things so holden as they own or shall own in the uses or trusts thereof; and this court has held in similar cases, where real and personal estate was involved, that the trust estates the statute was intended to operate upon are those in which the trustee has nothing but the naked, dry, legal title, with the whole beneficial interest in the cestui que trust. Boarman v. Catlett, 13 S. & M. 151; Ib. 103, cited and confirmed.

The courts of England, in giving a construction to the statute of frauds of 29 Car. 2, ch. 3, which is very similar in its provisions on the subject of the sale of trust estates to our own, have held that it only applied to bare and simple trusts, not of a complicated nature; and this being the correct construction of our statute on this subject, held, that Mrs. E. did not have such an interest in the slaves as could be subjected to the payment of her debts by proceedings at law.

The legal title to the slaves is in the trustees for her use, and the parties entitled to them in remainder. Held, that the trust estate is not therefore a naked, dry, legal title in the trustees, in which the sole beneficial interest was in the debtor (Mrs. E.), but is a trust in which the rights and interests of others are mixed up with the debtor's title.

The creditor, from the manner in which the property is conveyed, should seek the aid of a court of equity to subject it to his debt, where remainder-men can be effectually protected.

The legal title being in the trustees, Mrs. E. has only an equitable right therein. Held, the instruction given by the court below, that the property was liable for the debt, was error.

In error from the circuit court of Neshoba county; Hon. John Watts, judge.

This was an action for the trial of the right of property in the circuit court of Neshoba county, upon a judgment on attachment issued by Rodgers against Catharine Edwards, which was levied on a certain negro named Dock. Presley, as trustee, filed an affidavit and gave bond to try the right of property in the negro; and to sustain his claim to the negro, he introduced and read in evidence to the jury a deed of Edward Edwards to Charles and Lewis Presley, for the negro in controversy, conveyed in trust for the use and benefit of Catharine Presley,

during her natural life, and should she have children by her contemplated marriage, then to such issue forever; but upon failure of such issue, then the slave was to go to the children of E. by a former marriage. The deed bears date the 9th of August, 1820, in South Carolina, where the parties lived at the time it was executed, and was regularly recorded in that State; and it seems the deed was recorded in Neshoba county, Mississippi, on the 22d of December, 1845. Presley then proved the death of his co-trustee before the suit was instituted, and that Charles Edwards was the only issue who died before the suit was brought.

The defendant (Rodgers) proved that Catharine Edwards was in possession of said negro at the time of the levy on the negro, and had been in the possession of Catharine Edwards for five years before judgment was rendered against her, and that E. Edwards died in 1821. The defendant asked the court to charge the jury that said negro was subject to said levy and sale as the property of C. Edwards, if they believed the foregoing facts, which was given by the court. The jury found for Rodgers, and Presley took out this writ of error.

*W. E. Pugh,* for appellant.

This marriage settlement was entered into in 1820, before the passage of our statute of uses. Hence that statute cannot affect, or control it. It was also executed before the passage of our statute of 1822 passed, to prevent perjury and fraud; and, therefore, falls within the rule laid down by this court in the case of *Palmer* v. *Cross,* 1 S. & M. 48. The interest of Mrs. Edwards was only an equity for life, which is not the subject of levy and sale at law. *Goodwin* v. *Anderson,* 5 S. & M. 730.

The interest of Charles W. Edwards was only a contingent equity, to vest on the death of his mother, provided he was living at her death; but, having died in the lifetime of his mother, he took nothing by the deed. The proper construction of this deed is, Should Mrs. Edwards die leaving issue by the marriage, then this property was to vest in that issue absolutely. On the contrary, it was to belong absolutely, at the death of Mrs. Edwards, to the children of the grantor by a former mar-

riage. The word *then*, used twice in this deed, can refer only to the death of Mrs. Edwards, for place any other construction on it, and you thereby defeat the first object of the deed, to wit, the lifetime interest of Catharine Edwards. The whole interest being in her, or rather in Presley for her use for her life, no other interest could spring out of it until that life estate had ended. *Clark* v. *McCleary*, 12 S. & M. 347.

The possession of Mrs. Edwards was not adverse to the possession of Mr. Presley, the trustee. Her possession was his. It was within the intent and meaning of the deed, that she should enjoy the use of the property, and its possession.

There is no proof, or even an attempt to prove, that she ever claimed these negroes as hers, or against the trustee. Hence our statute of 1822 to prevent perjury and fraud, does not apply.

For these reasons the charge of the judge below was wrong, and the judgment should be reversed.

*Wharton, Guion & Baine,* on the same side, filed no brief.

*Enloe & Baldwin,* for appellee, filed no brief in the record.

Mr. Justice YERGER delivered the opinion of the court.

The defendant in error commenced suit in the circuit court of Neshoba county, by attachment, against Catharine Edwards. The attachment was levied upon three slaves, which were claimed by the plaintiff in error; and an issue to try the right of property was made up, and resulted in a verdict and judgment against the claimant.

From the evidence, it appears that the claimant founded his title on a deed of trust made and duly recorded in the State of South Carolina, in the year 1820, by Edward Edwards. By this deed, Edwards, who was about to enter into a marriage with Catharine, the daughter of Charles Presley, conveyed to Charles Presley, who has since died, and to Lewis Presley, the claimant, certain slaves, "in trust for the use, benefit, and behoof of the said Catharine Presley, during her natural life; and should she have issue by the contemplated marriage, then

to such issue for ever." In default of such issue, the slaves were to go to the children of the grantor by a former marriage. The grantor reserved by the deed, during his life, "the possession of the slaves, and all the profits and emoluments of the slaves."

The marriage was consummated, and the sole issue of it was a son, Charles W. Edwards, who died before the slaves were seized by virtue of the attachment. Edward Edwards, the grantor, died in South Carolina in 1821, and Catharine, the widow, removed to Mississippi with the slaves named in the deed, and had them in her possession when the attachment was levied upon them. They had been in her possession, in the State of Mississippi, five years before the levy, and the deed of trust had not been recorded therein.

The record contains no evidence, whether or not Charles W. Edwards at his decease left any children, or whether he died intestate. It is also equally silent, whether he left any brother or sister of the half blood, who, under certain circumstances, were to become entitled to the slaves named in the deed of trust.

As the deed of trust was executed in South Carolina, the fact that it was not recorded in the State of Mississippi does not prejudice the rights of any party claiming under it. It has been heretofore decided, that deeds of trust executed in other States are not embraced in the recording acts of 1822, Hutch. Code, 605; and that the failure to record the same in this State, after a removal of the property into it, does not impair their validity, even against *bonâ fide* purchasers and creditors without notice of its existence. *Palmer* v. *Cross et al.* 1 S. & M. 48 ; *Dobbs* v. *Prewitt*, 13 Ib. 431.

This brings us to the consideration of the question, whether Mrs. Edwards took under the deed an estate which was subject to an execution at law.

By reference to the deed of trust, it will be seen that the legal title was vested in the trustees. First. To permit the husband during his life to retain possession, and to receive the profits. Second. For the use of the wife during her life ; and,

thirdly, for the use of such children as might be born of the contemplated marriage.

The interest which the wife took under the deed was entirely equitable, and the enjoyment of it by her was postponed until the death of her husband.

Immediately upon his death, her right to the use and benefit of the property commenced; and this gave her a right to the possession, direction, and control of the slaves during her life. But this was a right purely equitable, and which she could only enforce in a court of chancery. The legal title still remained in the trustees, for the purpose of enabling them to execute the trusts imposed on them.

Our statute of 13 June, 1822, Hutch. Code, 610, sec. 29, declares that " estates of every kind, holden or possessed in trust, shall be subject to like debts and charges of the person to whose use or to whose benefit they were or shall be respectively holden or possessed, as they would have been subject to, if those persons had owned the like interest in the things holden or possessed as they own or shall own in the uses or trusts thereof."

This court has decided in several cases, in which the title to both real and personal property was involved, that the trust estates the statute was intended to operate upon are those in which the trustee " has nothing but the naked, dry, legal title, with the whole beneficial interest in the *cestui que trust.*" *Boarman* v. *Catlett*, 13 S. & M. 151 ; *Wolf* v. *Dowell*, Ib. 103. The English courts giving a construction to the statute of frauds, 29 Car. 2, ch. 3, which is very similar in its provisions on the subject of the sale of trust estates to our own, have held, that it only applied " to bare and simple trusts, not of a complicated nature, and where the interests of no other party were mixed up with the debtor's title." Lewin on Trusts, 547.

Recognizing the above as the true construction of our statute on this subject, we are of opinion, that Mrs. Edwards did not have such an interest in the slaves as could be subjected to the payment of her debts by proceedings at law. The legal title to them is in the trustee, for her use, and also for the use of those parties entitled to them in remainder. The trust estate is not,

therefore, a naked, dry, legal title in the trustee, in which the sole beneficial interest is in the debtor. It is not a bare and simple trust, not complicated in its nature, but is a trust in which the rights and interests of others are mixed up with the debtor's title.

The nature of the property conveyed by the deed, and of the interests held under it, renders this a case peculiarly fit for the enforcement of the rule, that a creditor shall seek the aid of a court of equity to subject it to his debt. That court is the only forum in which full and equal justice can be done to all parties, and in which the interests of the remainder-man can be fully and effectually protected. It is clear, that his interests may be seriously impaired in a sale of the slaves by execution at law, where no security can be required for their forthcoming, on the termination of the particular estate.

The fact that Charles W. Edwards, the sole issue of the marriage, died before the attachment was levied, does not, on the facts presented by this record, vary the rule which should govern this case.

It is true, that on his birth he became entitled to an estate in remainder, which was then vested in interest, though not in possession, and which estate, in the absence of a bequest, has descended to his next of kin. But on this record there is no evidence whether he died intestate or not; nor whether he left children, or brothers or sisters of the half blood; and we, therefore, cannot say in whom his title to the property vested on his decease. If it should turn out in proof, that the mother is entitled, either as legatee or as next of kin and distributee, she would then be seized of the whole beneficial interest in the property, and might then have such an interest as would be subject to execution at law. But on this point we express no opinion, because the facts in the record do not properly present it for consideration.

Inasmuch as the legal title to the slaves is in the trustee, and Mrs. Edwards has only an equitable right therein, the instruction given by the circuit judge, that the property was subject to the attachment of the plaintiff, was erroneous. The judgment must, therefore, be reversed, and the cause remanded.