Barker et al. *v.* Stacy.

SAMUEL BARKER et al. *vs.* DAVID S. STACY, Administrator, &c.

The language of the statute (Hutch. Code, 606, § 5) does not in terms embrace deeds of trust, or mortgages executed in any other State.

There is nothing in the statute or subject-matter of the act, which would justify a conclusion, that mortgages or trust deeds executed abroad, are within the intention of the legislature in the passage of that law.

The registration laws of this State render unrecorded instruments like those mentioned inoperative as to subsequent creditors and *bonâ fide* purchasers without notice.

*Aliter*, as to a foreign mortgage which has been executed and recorded according to the laws of the place where made. *Held*, in such case, the mortgage has absolutely vested.

*Palmer* v. *Cross*, 1 S. & M. 48, cited and confirmed by the court; *Prewett* v. *Dobbs*, 13 S. & M. 431, cited and confirmed; *Presley* v. *Rogers*, 2 Cushm. 520, cited and confirmed.

The statute (Hutch. Code, 638, § 3) declares, that the provisions of that act "shall not extend to any estate or interest in lands, goods, or chattels, or any rents, common, or profit out of the same, which shall be, upon good consideration and *bonâ fide*, lawfully conveyed or assured to any other person or persons, bodies politic or corporate." . *Held*, that this statute applies to the question in dispute.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The appellee filed his bill in the superior chancery court, in which he alleges, that his intestate (Lee) died in Mississippi, leaving a large estate in Concordia Parish, Louisiana, and some in Mississippi; that in 1840, complainant was duly appointed, in Concordia Parish, administrator of said estate in Louisiana; that in 1841, he was duly appointed, by the Adams probate court, administrator of said estate in Mississippi. Copy of his letters filed as exhibit B. That prior to his appointment in Louisiana, the parish judge, having authority by law to that effect, had ordered a sale of certain property of said estate, which was sold by said parish judge, on the 29th of March, 1837, and purchased by said Samuel Barker, the entire purchases of Barker amounting to $12,180; that by the terms of

said sale, seven per cent. of the purchase-money was to be paid in cash, and the balance in four equal annual instalments, the purchaser giving notes with two sureties at least, and a special mortgage reserved upon the slaves until final payment; said notes to be made payable at the office of the parish judge, and to bear interest at ten per cent. ; that Barker paid the seven per cent., amounting to $852.60, and made his four promissory notes, each for the sum of $2,831.35, with Russell and Bowen as his sureties, payable according to the terms of the sale, which notes were, by said judge, "paraphed" with an act of mortgage then and there executed by said Barker and his sureties, upon said slaves, to secure the payment of said notes; that by virtue of complainant's appointment as administrator in Louisiana and in this State, and the delivery to him of said promissory notes by the parish judge, of which said Barker and sureties had due notice, he had become entitled to collect the same; that said notes had long since become due and payable; that payment had been duly demanded and refused, said notes paraphed as aforesaid; that Samuel Barker, after his said purchase, had unlawfully, and without the knowledge or consent of complainant or the parish judge, removed said negroes to Mississippi, where they now remain, except two who have died; that Barker and his sureties are not residents of this State, and are insolvent; that by the nonpayment of said notes, a legal right has vested in complainant to sell said slaves for their payment. The bill then describes the location of said slaves.

The defendants, Scott and Dangerfield, demurred to the bill, and the demurrer was overruled by the chancellor.

They then answered the bill, and admit the death of Lee, and the grant of letters to complainant as alleged; admit that at the time of the filing of said bill, Dangerfield had in his possession a slave named David, and that Scott had in his possession one named Mitchell; which said slaves were purchased by Dangerfield, at a sale made by the Jefferson county sheriff, in the spring of 1841, under an execution against said Barker; and that a few days after said sale, Dangerfield sold the slave Mitchell to defendant Scott, for a full and valuable

consideration; that neither at the time of the purchase by Dangerfield, nor of the sale by Dangerfield to Scott, had either of said defendants any knowledge of the manner in which said slaves had been obtained by Barker. They only knew that Barker had been in possession of them for several years prior to said sheriff's sale, and they believed that said Barker had a good unencumbered title to them; and that said Dangerfield purchased said slaves under the full belief that he was getting a clear title, and that Scott purchased from Dangerfield under the same belief. They aver, that until the filing of said bill, they had no knowledge or intimation of complainant's mortgage or lien, nor did they know until the filing of said bill, that said slaves had ever been part of the estate of Lee, or that they had ever been sold by the parish judge to Barker, or that there was any mortgage or lien of any kind upon them, or that Barker had given his notes for them, or that the purchase-money was unpaid, &c., and they have no such knowledge now, except as aforesaid, the truth of which they do not admit, and require full proof.

They are informed, and believe, and charge, that said supposed mortgage has never been recorded in this State.

They aver, that at the time said sale is alleged to have been made by the parish judge, Barker resided in the county of Jefferson in this State, on the Mississippi river, opposite the parish of Concordia, and not more than ten miles below the place where Lee's property was sold by the parish judge. They aver, that said Barker had resided there several years next before said sale, and was then residing there upon a large plantation, and that the said parish judge then well knew that Barker resided in the State of Mississippi, and also well knew the place where he resided, and that said Barker had no plantation in the State of Louisiana; and he must have known, that any slaves which said Barker might purchase at said sale, would be removed by him to this State; and they believe and charge, that the slaves purchased by Barker at said sale, were removed by him, immediately after said sale, to his said plantation in Mississippi; and that said parish judge well knew that

40 *

fact, and that the same was well known to complainant when he became administrator in 1840.

They say that Mitchell is still in the possession of defendant Scott, and they aver that David is dead, he having died since the filing of this bill, to wit, in October or November, 1843.

They aver, that no demand has ever been made upon them for said slaves or either of them, nor has any notice ever been given to them or either of them, of any mortgage or lien upon said slaves, in favor of complainant or any one else.

They do not admit, that the slaves David and Mitchell, in this answer mentioned, are the slaves David and Oscar, in the said bill named, and they require proof thereof.

They believe that Barker has removed from this State, and is insolvent. They neither know nor admit the insolvency of any of Barker's sureties, &c., and having fully answered, &c.

On the 21st January, 1846, complainant, by leave of the court, filed an amended bill, alleging, that at the time when Dangerfield and Scott acquired the possession of said slaves, they severally had notice in fact of said mortgage. That Breton, the parish judge, died May 7, 1840, without ever knowing that said slaves had been removed to this State; and that complainant learned that fact only a month or so before the institution of this suit. Avers, that the reasonable hire of said slaves, since the institution of the suit, is $120 per annum each.

The court decreed a sale of the negroes, and defendants appealed.

*J. B. Coleman,* for appellants.

The reason for requiring mortgages of personal property to be recorded in the county where the property is located, or to which it may be removed, certainly applies with as much force to those made out of the State, as to those executed within it. The object is to give notice that the party in possession of the property is not its absolute owner, and to prevent innocent purchasers from being deceived and defrauded; and that the supposed owner may not obtain false credit.

It seems to us, that the statute covers foreign as well as domestic mortgages, for there is no exception contained in it, and comprehends all cases. Hutch. Co. 605, § 45.

Unless the plaintiff in the judgment under which the negroes were sold, had notice of the mortgage before the rendition of his judgment, the lien attached upon the negroes, and could not subsequently be divested by notice to the plaintiff in the execution, or to purchasers at the sale. *Henderson* v. *Downing*, 2 Cushman, 106.

The negroes had been in the possession of Barker, in this State, for more than three years next preceding the levy of the execution under which they were sold; and during that time, Lee, the administrator, set up no claim to them. This possession renders them liable to the claims of Barker's creditors; and against them, the administrator can set up no claim or title to defeat the creditors of Barker.

*H. T. Ellett*, on the same side.

*L. Sanders, Jr.*, for appellee, -

Contended, that the merits of this case had several times been decided by the chancellor and by this court.

If there is any error in the decree of the court, it is, that the court erred in not decreeing that the defendants account for the hire of the slaves after the institution of the suit, inasmuch as it appears, from the evidence in the cause, that the parties to the notes are insolvent; and the few slaves remaining are not of value sufficient to satisfy a fourth part of the debt due. We, therefore, contend, that the decree of the court below be affirmed.

Mr. Chief-Justice SMITH delivered the opinion of the court.

This was a bill filed in the superior court of chancery for the purpose of a foreclosure and sale of the equity of redemption held by Samuel Barker in certain slaves which were mortgaged by him in the State of Louisiana. The decree was for the complainant in the court below; and we will proceed to notice the objections urged by the appellants against its validity.

1. The act or deed of mortgage on which the complainant based his right to the relief prayed for, was executed in the parish of Concordia, in the State of Louisiana. The slaves thereby conveyed were subsequently removed into the county of Jefferson, in this State, where they were held in possession by said Barker from 1837 to 1841, when they were sold by the sheriff, under executions against Barker, and as his property. The mortgage under which the complainant derived his claim had never been recorded in the county of Jefferson; and it is not pretended that the appellants, Dangerfield and Scott, who hold under the sale made by the sheriff, had notice of the existence of the mortgage before the rendition of the judgment against Barker, under which the sale was made. Upon this state of facts, it is contended, that the purchaser at the sheriff's sale took the slaves freed from any incumbrance whatever arising by reason of the mortgage executed in Louisiana.

In *Henderson* v. *Downing et al.*, 24 Miss. R. 106, this court held, that a judgment creditor was not affected by a prior deed of trust, of which he had no notice, either at the time when the debt was contracted, or before the judgment was rendered; hence, that he had a right to enforce his judgment by a sale of the land conveyed by said trust deed, although notice may have been given to him of the existence of the deed subsequent to the rendition of the judgment; and that a purchaser at the sheriff's sale would acquire an unincumbered title, although he should purchase with notice of the deed of trust. According to this decision, the notice given on the day of sale, of the existence of the mortgage executed in Louisiana, would not affect the title of the appellants, if the title acquired under that mortgage should be held to be lost or postponed as to the creditors of Barker in this State, by the omission to have it recorded in this county of Jefferson.

The language of the statute, (Hutch. Dig. 606, § 5,) does not in terms embrace deeds of trust or mortgages executed in any other State of this confederacy. And we apprehend that there is nothing in the statute, or in the subject-matter of the law, which could properly lead us to the conclusion that mortgages or trust deeds executed abroad were within the intention of the

legislature. The registry laws of this State render unrecorded instruments of that character inoperative as to subsequent creditors and *bonâ fide* purchasers without notice. In effect, as to them, no title vests in the grantees. Very different is the condition of the mortgagee under a foreign deed of mortgage, which has been executed and recorded according to the laws of the place where made. In such case, title in the mortgagee has absolutely vested. Hence, to extend the statute above referred to to cases of foreign mortgage, in which the mortgaged property has been brought within the jurisdiction of this State, would not be to hold that no title had vested under the deed; but that the title which had actually vested should be forfeited or postponed by the omission to record the deed.

As early as 1843, this court, in the case of *Palmer* v. *Cross et al.*, held, that the preceding section of this statute, which provides that " all deeds respecting the title to personal property thereafter executed, which by law ought to be recorded, shall be recorded in the court of that county in which such property shall remain; and if afterwards the person claiming title under such deed shall permit any other person, in whose possession such property shall be, to remove with the same, or any part thereof, out of the county in which such deed shall be recorded, and shall not, within twelve months after such removal, cause the deed aforesaid to be certified to the county court of that county into which such other person shall have so removed, and to be delivered to the clerk of such county court, to be there recorded, &c., shall be void in law as to all purchasers thereof, without notice, and as to all creditors," was intended by the legislature to apply only to deeds which were executed for personal property within this State at the time of making the conveyance, and to its subsequent removal from one county to another within its limits. The question in that case arose upon a deed of trust executed in the State of Virginia. The property in controversy had been conveyed to trustees for the benefit of a married woman for her life, and for the children she then had or might thereafter have. The husband of the donee, or both jointly, had possession of the property, which was afterwards removed into this State, where it remained for

more than two years; the deed of trust not having been recorded in the county where the property was situated. The principle recognized in that case has never been overruled. In *Prewett* v. *Dobbs*, 13 S. & M. 431, on the contrary, the same view of the statute was taken by this court, when the precise point under consideration was examined and decided.

It is probably true, as contended for by counsel, that the latter case might have been determined without deciding that an instrument executed abroad, and which purported on its face to be a mortgage, was not within the operation of the registry laws. The question, however, arose in the case, and was directly decided.

In a still later case, the case of *Presley* v. *Rogers*, 24 Miss. R. 520, this question again came up, and was decided according to the previous adjudication. The court, in its opinion, citing the cases above referred to. So that if the question had been one of even greater doubt than it was admitted to be when first presented, we must now consider it settled.

Another ground assumed by counsel for the appellants is, that the slaves in controversy, having remained for the period of three years in the possesion of Barker within the county of Jefferson, and that during that time no claim had been made upon them in behalf of the appellee, became liable, under the statute of frauds, for the debts of Barker; hence, that the purchaser, at the sale made by the sheriff, acquired a title freed from the mortgage lien.

If it were at all doubtful whether the second section of the statute referred to (Hutch. Co. 637) did apply to the case at bar, we think the third section can leave no doubt on the subject. It declares, that the provisions of that statute "shall not extend to any estate or interest in lands, goods, or chattels, or any rents, common, or profit out of the same, which shall be upon good consideration, and *bonâ fide* lawfully conveyed or assured to any person or persons, bodies politic or corporate."

Let the decree be affirmed.