MARY WYSE, Executrix, &c. *v.* ELIZA DANDRIDGE et al.

1. CONFLICT OF LAWS: BY WHAT LAW DEED OF TRUST IS GOVERNED: CASE IN JUDGMENT.—A deed of trust made in Tennessee, conveying slaves which were at the time in that State, where also the *cestui que trust* resided, will be governed by the laws of Tennessee, although the trustee resided at the time in this State, and is so described in the deed, if no duty be imposed on him

Wyse *v.* Dandridge et al.

by the deed, which requires a removal of the slaves to this State, unless it be clearly shown that the conveyance was intended to take effect in this State, and not in Tennessee; and the subsequent removal of the slaves by the trustee to this State, is not sufficient evidence to show an intention that the deed was only to take effect here.

2. CHANCERY: BONA FIDE PURCHASER FOR VALUE, PROTECTED.—A *bona fide* purchaser for a valuable consideration, who has acquired a legal title and possession from the trustee, will be protected in equity against the *cestui que trust;* for by his purchase of the legal title he has the advantage at law, and, having paid his money without notice, his equity is equal to that of the *cestui que trust.* 2 Tuck. Com. 446; 2 Fonbl. Eq. book 2, ch. 7, § 1; *Bank of England* v. *Tarleton,* 23 Miss. R. 173; *Lusk* v. *McNamee,* 24 Ib. 58; *Henderson* v. *Warmack,* 27 Ib. 130.

3. SAME: BONA FIDE PURCHASER NOT AFFECTED BY REGISTRATION OF DEED IN A FOREIGN STATE.—The rights of the *cestui que trust* under a deed in trust executed in another State, will be protected here, notwithstanding its non-registration in this State, as against the creditors of the grantor or trustee; but this rule does not apply as against *bona fide* purchasers for value, of the legal title from the trustee; and hence, if such deed be not registered in this State, the defence of a *bona fide* purchaser for value, without notice, will not be affected by its registration in the State where it was executed.

4. SAME: RULE PROTECTING BONA FIDE PURCHASER, APPLIES TO PURCHASER OF CHATTELS.—The rule which protects *bona fide* purchasers for value, applies to purchasers of chattels, as well as to purchasers of real estate.

5. SAME: BONA FIDE PURCHASE, HOW PLEADED.—An answer setting up the defence of a *bona fide* purchase, for a valuable consideration, which avers that the defendant purchased and paid for the property in good faith, without any notice, in fact or in law, of the claim of complainant, or of the claim or interest of any person in conflict with the absolute ownership of his vendor, is sufficiently explicit and full.

APPEAL from the District Chancery Court at Hernando. Hon. James F. Trotter, vice-chancellor.

The appellees filed their bill in the court below in 1853, against W. H. Wyse, appellant's intestate, to recover two slaves, and their hires.

They claimed title under a deed in trust, executed on the 4th day of November, A.D. 1846, to N. W. Dandridge, Jr., in trust for appellees. This deed recites, that the grantor, Tate, is a resident of Shelby county, Tennessee, and the trustee is a citizen of De Soto county, Mississippi; and, for the consideration of $450, paid by the trustee to the grantor, conveys the two slaves in con-

troversy to the said trustee, upon the following trust : " The object and design of the above bill of sale, on the part of said Jesse M. Tate (the grantor), is as follows : that Eliza Dandridge (one of the complainants), the mother of said N. W. Dandridge, Jr., shall have and be entitled to all the profits arising from the use of said slaves, during her natural life, to her own sole and separate use, free from all control of her husband ; and at her decease, the said slaves shall be conveyed, in fee simple, forever, to Mary Elizabeth and Eliza Dandridge (the other appellees), their heirs and assigns forever ; they being the youngest unmarried daughters of said Eliza Dandridge, the mother of said N. W. Dandridge, Jr., who is hereby constituted and appointed trustee to carry out and accomplish the aforesaid objects and ends." . . . . . "It is hereby designed and intended by the said Jesse M. Tate, that no right, either legal or equitable, shall vest in the said Eliza Dandridge, the mother of said N. W. Dandridge, Jr., other than the use and profit of the same."

This deed was duly acknowledged on the 5th November, 1846, and recorded on the 25th February, 1847, in the register's office of Shelby county, Tennessee.

The answer showed, that the trustee sold the slaves to one Steinline, on the 16th February, 1847, and, on the twentieth of that month, Steinline sold to Wyse ; and makes the following points to defeat a recovery :—

1st. That the trust deed from Tate, though executed in Tennessee, was made with reference to the State of Mississippi, and contemplated being executed there, and is therefore governed by the laws of this State, and void for want of registration here.

2d. That both Steinline and Wyse are innocent purchasers for a valuable consideration, and without notice ; and on this point the statement of the answer is as follows :—

" That said N. W. Dandridge, Jr., executed and delivered to said Steinline a bill of sale for said slaves, which, together with said slaves, was delivered into the possession of said Steinline, and, in a few days thereafter, the said Steinline, in consideration of the sum of $675, sold and conveyed and delivered said slaves to respondent. And respondent says, that by said bill of sale the legal

title to said slaves passed to him; and that, since its execution, respondent has been clothed with the legal title to said slaves.

" Respondent denies that he had notice, in fact or in law, of the deed of trust from Tate to said N. W. Dandridge, Jr. He denies that he had notice that complainants, or either of them, had any interest in, or claim to the said slaves; and he charges the fact to be, that he purchased said slaves from the said Steinline in good faith, and that he thereby became a *bona fide* purchaser of them for a valuable consideration, and without notice of the claim of complainants, or of any other person claiming an interest in them, in conflict with the absolute ownership of them by said N. W. Dandridge, Jr."

3d. The said trust deed was fraudulent, in law and fact, as to purchasers from said N. W. Dandridge, Jr. The proof showed, that the complainants, the *cestui que trust*, and the slaves in controversy, were all resident in Tennessee, at the date of the deed; that the slaves were delivered into the possession of Mrs. Eliza Dandridge by Tate, on the day the deed was executed.

It does not appear how long the slaves remained in Tennessee; but it is shown, by an agreement of counsel, that in a few weeks after the 4th November, 1846, they were in possession of the trustee in this State, and who was then endeavoring to sell them; and that he, on the 16th February, 1847, sold and delivered them to Steinline; who, four days thereafter, sold and delivered them to Wyse. That Steinline and Wyse both paid the price for the slaves mentioned in their bills of sale, to wit, $650, and $675.

Steinline was made a defendant by cross-bill of Wyse; and, in his answer, he denied that he had notice of complainants' claim when he purchased.

The vice-chancellor decreed for complainants, both the specific delivery of the slaves, and the payment of hires since they were in Wyse's possession. From this decree, Wyse, administrator, appealed.

*Watson* and *Craft*, for appellants.

The defendant, Wyse, in his answer, makes three points, to wit:—

1st. That the trust-deed, under which complainants' claim, though executed in Tennessee, where the grantor and *cestui que trusts* resided, and where the slaves then were, was executed with

reference to the State of Mississippi, and contemplated the immediate removal of the slaves there, and to the execution of the trust there by the trustee, and must therefore be governed by the laws of Mississippi; and the said trust, not having been recorded in Mississippi, was void as against Steinline and Wyse, under the circumstances of the case.

2d. That Steinline and Wyse were each *bona fide* purchasers of said slaves, in the State of Mississippi, for a valuable consideration, and without notice; and, as such, became invested with the legal title, and their equity being equal to that of complainants, their right cannot be disturbed, either at law or in equity.

3d. The said deed from Tate to the said N. W. Dandridge, Jr., was fraudulent in law and in fact; and therefore void as to both Steinline and Wyse, who were subsequent *bona fide* purchasers of said slaves from said trustee, Dandridge, for a valuable consideration, and without notice.

1st. That all of the parties to said trust contemplated the immediate removal of the slaves into Mississippi, and the performance of the trust there, is manifest from the following considerations:—

The deed recites that the trustee was a citizen of De Soto county, Mississippi; and it is an agreed fact that he had resided in Mississippi since 1840. Complainants also allege, that the trustee "accepted the said trust, and took the said slaves into his possession;" and, moreover, the deed imposed duties on the trustee which made the trust an unexecuted one, and clothed the trustee with the legal title to the property, and with the right to its possession and control. 5 How. Miss. R. 742–3. The complainant, Mrs. Dandridge, during her life, was to be entitled, under the trust, not to the possession and services of the slaves, "but to the profits arising from the use of said servants." And the proof shows that the said trustee did, on his return to Mississippi, take with him the said slaves, and there held them, until he sold and delivered them to Steinline.

It is conceded, that the registry laws of Mississippi do not embrace trusts and mortgages, executed in other States on property and between parties not in this State, and not originally intended to be executed in this State. *Palmer* v. *Cross,* 1 S. & M. 48; *Prewett* v. *Dobbs,* 13 Ib. 431; *Presly* v. *Rogers,* 2 Cush. 520; *Baker* v. *Stacy,* 3 Ib. 471.

But wherever a deed of trust or·mortgage may be executed, if it conveys property, real or personal, within the limits of this State, and is to be performed in this State, it is void as to subsequent creditors and purchasers, unless properly recorded in this State : *Tillman* v. *Cowand*, 12 S. & M. 262; *Dalton* v. *Murphy*, 30 Miss. R. 59; and this rule must equally apply to a trust executed upon property out of Mississippi, but which it is intended shall immediately be brought into the State, and then remain subject to the trust. If this were not so, citizens of this State might take their property into other States, and there give a trust upon it, and then return with it into this State, and here perpetrate the grossest frauds upon creditors or purchasers. Or persons intending to remove from other States into Mississippi might, before they started, cover up their property by trusts or mortgages; and then, thus secretly incumbered, bring it into this State, and here hold possession of it; and, by such possession, get credit, or make sales of it to others; whilst, at the same time, it would be protected from their liability and contracts, by such foreign deed or deeds.

In the case of *Tillman* v. *Cowand*, 12 S. & M. 262, a purchaser was protected against one claiming under a trust-deed, because the same was not recorded in this State, according to the directions of the statute, and was therefore void as to a purchaser for a valuable consideration without notice. And in the case of *Dalton* v. *Murphy*, 30 Miss. R. 59, a deed of trust, executed in Alabama, was held void, because the parties to it contracted with reference to the laws of this State, and had not conformed to their requirements. See Hutch. Code, 605, sec. 3.

2d. If it should be held that the trust was one not embraced by the laws of this State, then the case is one of a sale, conveyance of the legal title, and delivery of the property sold, for a valuable consideration, and without the notice of the trust.

The general principle is admitted that, from a vendor of property or other thing, without title, no title can be acquired; and, as against a *bona fide* outstanding legal title, it is conceded, that the question of notice, or want of notice, is unimportant. These principles apply to all sales of an equitable interest or title, or by persons having no title of any kind. They also apply to sales made in this State by executors or administrators without authority

of law. By the laws of this State, the legal title to a decedent's property is not vested generally in his personal representative; but specially, for certain purposes only. *Andrews* v. *Brumfield*, 32 Miss. R. 107. Therefore, an illegal sale by an executor or administrator, does not pass the title. *Cable* v. *Martin*, 1 How. Miss. 559; *Edmondson* v. *Roberts*, 2 Ib. 822; *Barnes* v. *McGee*, 1 S. & M. 208. These are the principles on which was decided the case of *Hull* v. *Clark*, 14 S. & M. 187. But Dandridge sold and conveyed the legal title to the slaves in controversy to Steinline, who, by his sale and conveyance, passed it to Wyse; and, therefore, as one who had acquired and was clothed with the legal estate or title, Wyse was placed in a condition to defend himself, on the ground of being a *bona fide* purchaser for a valuable consideration, without notice.

That this defence is alike applicable to real and personal property, and even to choses in action, can scarcely be questioned at the present day. The general principle on this subject is, as we think, correctly stated in the case of *Paport* v. *Gibson*, 7 Ga. R. 530, in these terms:—

"I take the law to be clear, that while the power of the trustee over the legal estate or property vested in him, properly speaking, exists only for the benefit of the *cestui que trust*, yet as the legal owner he may do many acts to the prejudice of the *cestui que trust;* and, among the rest, he may even dispose of the property, so as to bar the interest of the *cestui que trust* therein, as by a sale to a *bona fide* purchaser, for a valuable consideration, without notice of the trust." 7 Ga. R. 534. In the case of *Ewing* v. *Carghill*, 13 S. & M. 80, which was a controversy about slaves, the court sustained the title of the claimant, on the ground, that the law "throws a shield around *bona fide* purchasers, for valuable consideration without notice." 13 S. & M. 83, 84. See also the case of *Henderson & Moore* v. *Warmack*, 27 Miss. R. 830. In this case it was held, that the complainants had a right to recover the value of a slave and his hires, as against Henderson & Moore, but as against another party to the suit, Montgomery, who had purchased the slave from Henderson & Moore, the court says: "But there is no equity shown against Montgomery. He was a purchaser, for aught that appears, without notice, from parties having posses-

sion and holding an absolute conveyance of the slave. Under such circumstances, the complainants could not set up their secret equity to deprive him of his purchase." 27 Ib. 836. In the case of *Wailes* v. *Cooper*, 24 Ib. 208, which involved the right of two of the parties, in equity, to be relieved of a judgment against them, the court says: " The executor of Smith, therefore, has the legal advantage; and, as Smith was a *bona fide* holder, for valuable consideration without notice, he has an equity of equal dignity, to say the least of it, to recover the money, with that of Cooper and Johnson, to be relieved from its payment; and in such a case, the rule in chancery is invariable and inflexible. Where two parties present a case, in which the equity is equal, the legal right will always prevail." 24 Ib. 233, 234. The case of *Coleman* v. *Rives*, 24 Ib. 634, also affirms the proposition, that " where equities are equal, the party having the legal advantage, must prevail." 1 Story's Eq. Jurisprudence, § 139 ; 2 Fonbl. Eq. b. 2, ch. 7, § 1, note a; Story's Eq. Pleading, § 604; 11 Humphrey's R. 478, 482, 483; 1 Swann, 128.

The facts agreed in the case, show, that Steinline and Wyse, upon a valuable consideration, actually paid, respectively became clothed with the legal title, and therefore it only remains to consider the question : Did they purchase with notice ?

That either of them had actual notice of the trust on which Tate had conveyed the slaves to Dandridge, is not so much as charged in the pleadings; and their want of actual notice is placed, it is believed, beyond controversy, by the facts of the case. N. W. Dandridge, Jr., the trustee, returned to his home in Mississippi from a visit to Tennessee, bringing with him the two slaves in controversy, and in Mississippi he continues to hold possession of them, from early in November, until the middle of February following. Now the possession of personal property is the usual *indicium* of title, and in Tennessee and Mississippi both, the legal title to slaves passes by verbal sale and delivery of possession. 5 Yerger, 281, 282; 8 Ib. 387. The trust deed, we are told by the witness Tate, was executed by him and delivered to the complainant, Mrs. Eliza Dandridge, on 4th November, 1846, and he says, he directed her to have it immediately recorded; but of this trust nothing whatever was heard until it was delivered to be recorded in Tennessee, on

15th February, 1847, the day preceding the sale of the slaves, by Dandridge, in Mississippi. These facts, it is submitted, preclude the idea of actual notice by either Steinline or Wyse, when they made their purchases respectively. Was then the registration of the deed in Tennessee legal or constructive notice of the equitable title of complainants under it, as against Steinline and Wyse? We hold that it was not.

It may be, and probably is true, that by force of the registration laws, a deed of trust or mortgage legally recorded in Tennessee or Mississippi, would operate as constructive notice of the equitable interests declared by such trust, within the limits of each State respectively; but what we affirm, is, that a trust legally executed and recorded in Tennessee, is not legal or constructive notice in Mississippi, of the equitable interests conferred by it. It is not, either in Tennessee or Mississippi, by express legislative enactment, that trusts legally recorded have been declared notice of the equitable rights and interests held under them; and it never has been decided in Mississippi, and we suppose never will be, that trusts not embraced in the registration laws of the State, or not recorded according to the laws of this State, operated in the State, as notice to any extent or for any purpose whatever. It has been expressly decided by this court, that the registration laws of the States respectively, do not operate extra-territorially. *Hundly* v. *Mound*, 8 S. & M. 387. The registration of deeds or title-papers was unknown to the common law; hence legal notice resulting from registration, is not a common law doctrine, but the mere creature of statute law. In every instance in which a claim under a trust or mortgage, executed out of this State, and not recorded within it, has been sustained, it was the legal title that was held against one who had acquired but an equitable right or interest. Such were the cases of *Prewett* v. *Dobbs*, 13 S. & M. 431; *Presley* v. *Rogers*, 24 Miss. R. 520; *Barker* v. *Stacy*, 25 Ib. 471. These cases affirm but the common law principle, that a party holding the legal title to property, cannot be divested of that title, except by his own sale, conveyance, act, or default. To this principle, the registration laws were not intended to give additional efficacy; but for the protection of creditors and purchasers in certain cases, to deprive parties of its benefit, by declaring deeds and other instru-

ments, not recorded, void. 3 Leigh, 365, 381–383. But as to trusts or mortgages executed upon personal property out of this State, and not with reference to the laws of this State, our laws are wholly silent; and therefore, whilst they are not required to be recorded in this State, when recorded elsewhere, they have in this State only the effect and operation given to them by the principles of the common law; and on common law principles, we insist that nothing is better settled, than that, under the circumstances of this case, Steinline and Wyse were *bona fide* purchasers for a valuable consideration without notice, and as such are entitled to protection.

In this State, a defendant who in an answer claims protection as a *bona fide* purchaser, &c., is not required in such answer to make all the averments, which are necessary in a plea setting up that defence. *Servis* v. *Beatty*, 32 Miss. R. 53. Wyse, in his answer, explicitly claims to be a purchaser for a valuable consideration, and without notice; and, having chosen thus to answer, "it is," in the language of the court, in the above-mentioned case, "well settled that the defence will be good, if substantiated by proof." 32 Ib. 88. As to the proofs in this case, the following facts are agreed: "That Steinline bought said slaves, at the time, and for the consideration stated in his bill of sale, filed with his answer; and that Wyse purchased them at the time, and for the consideration stated in his bill of sale, filed with his answer;" and that it was also "the intention to admit the sale to Steinline and Wyse, and the payment of the purchase-money by them, and possession of said slaves by them respectively, from the dates of their said bills of sale."

3d. The conveyance under which the complainants claim, is a voluntary one, which is void as to Steinline and Wyse, as subsequent *bona fide* purchasers for value, without notice.

The complainants do not allege, that the consideration on which said conveyance was executed, moved in any way, or to any extent, from them. But, on the other hand, it is proved by their own witness, Tate, that the $450, for which he, Tate, sold the slaves in controversy, were paid to him by N. W. Dandridge, Jr.; and this fact also appears on the face of the trust itself, it being there recited. N. W. Dandridge, Jr., then, having paid for the slaves, the transaction will be regarded as a direct conveyance by him to the

complainants; and the complainants will be held to be volunteers claiming under him. *Wells* v. *Treadwell,* 28 Miss. R. 717; 10 Ala. R. 348.

The principles upon which a voluntary conveyance is void, against a subsequent *bona fide* purchaser for value, without notice, are fully discussed and clearly stated, in the cases of *Cathcart* v. *Robinson,* 5 Peters, 263; *Fleming* v. *Towndsend,* 6 Ga. R. 103; and *Wells* v. *Treadwell,* 28 Miss. R. 717. These cases fully establish the rule to be, that "a subsequent sale, without notice, by a person who had made a settlement, not on valuable consideration, was presumptive evidence of fraud, which threw on those claiming under such settlement, the burden of proving that it was made *bona fide."*

In the present case, the presumption of fraud, arising from the subsequent sale and conveyance of the slaves by N. W. Dandridge, Jr., to Steinline, it is submitted, is not repelled by a single circumstance.

N. W. Dandridge, Jr., leaves his home in Mississippi, repairs to Memphis, and there purchases and pays for two slaves, on the 4th of November, 1846. These slaves he has conveyed to himself, in trust for his mother and two youngest sisters. The slaves thus purchased and conveyed, he takes into his possession, returns with them to his home in Mississippi, and there holds them until the 16th day of February, 1847, when he sells and conveys them, for a valuable consideration, to Steinline, who, taking possession of the slaves, holds them for a few days, and then sells, conveys, and delivers them to the defendant, Wyse. He holds the slaves, without disturbance from any quarter, until May, 1853, when complainants filed their bill, and bring to light, for the first time, the deed of the 4th of November, 1846, under which they claim. From the showing of the complainants themselves, this deed was not delivered for record until the 15th day of February, 1847, the day preceding the sale to Steinline, when it was filed for registration in Tennessee. The complainants, in their bill, also aver, that N. W. Dandridge, Jr., the trustee, ". departed this life without having in any manner accounted for the hire of said slaves." He died, the proof shows, in November, 1852. So that the complainant, Mrs. Eliza Dandridge, according to her own showing, acquiesced, for the

long period of five years, in the refusal or neglect of her said alleged trustee, to pay over to her what she now claims to have been her unquestionable right, the hires of the slaves. The deed does stipulate, that she was to "have, and be entitled to, all the profits arising from the use of said slaves during her natural life, to her own sole and separate use." It is also in proof, by the witness Tate, that, during all that time, she and her husband, "were in rather poor circumstances."

From all these facts, the presumption of fraud, so far from being rebutted, is established, we submit, by "confirmation strong as proof of holy writ."

The conveyance, then, under which complainants claim, having been fraudulently made to them, will be deemed void, as to Steinline and Wyse, subsequent purchasers for value and without notice, there being no necessity for the relation back to the deed under which complainants claim, and to prove that deed to have been executed with a fraudulent intent to deceive a subsequent purchaser. 5 Peters, 279; 6 Ga. 107–10; 28 Miss. R. 276.

Steinline and Wyse were each purchasers without actual notice; and constructive notice, arising from the naked fact, that the trust deed was recorded in Tennessee, the day before Steinline purchased, will not affect them.

In the first place, we insist, on the grounds already stated in a previous part of this brief, that the registration of a deed in Tennessee, does not operate as notice in Mississippi, of equitable rights conferred by such deed. But it is farther insisted, that the legal registration of this deed in Mississippi, prior to the purchase by Steinline, would not of itself have affected him with notice. Though, for many purposes, the legal record of a deed in this State, is notice, we hold, that it is not such notice as will make a voluntary fraudulent conveyance good, against a subsequent purchaser for value. A subsequent purchaser for value, as against a prior volunteer, is postponed solely upon the ground, that the act of buying property, with the knowledge that another has a legal or equitable title thereto, is fraud, or *mala fides.* · 1 Hilliard on Vendors, ch. 33, 399, and notes thereto; *Fleming* v. *Towndsend*, 6 Ga. R. 111–2.

The voluntary deeds, in the cases of *Fleming* v. *Towndsend*, 6

Ga. R. 103, and *Cathcart* v. *Robinson*, 5 Peters, 263, were each regularly recorded, but were nevertheless held to be fraudulent and void, as against subsequent purchasers for value. To hold that the simple act of registration, would of itself make valid and operative a fraudulent deed, would open the door to fraud and swindling by wholesale.

*Yerger* and *Rucks*, for appellants.

A deed of trust of slaves, executed in another State, was not required to be recorded in this State, by the Act of 1822 (Hutch. Code, 605); and a failure to record it, after the removal of the slaves to this State, does not impair the rights of parties claiming under the deed, even against *bona fide* purchasers and creditors. *Palmer* v. *Cross*, 1 S. & M. 48; *Dobbs* v. *Prewett*, 13 Ib. 431; *Presley* v. *Rodgers*, 2 Cush. 524.

The doctrine, that a *bona fide* purchaser without notice, will be protected in a court of equity, applies only to real estate, and not to purchasers of personal property.

This is manifest, from the rules of law in relation to sales of personal property.

Chancellor Kent says : " The general principle applicable to the law of personal property, throughout civilized Europe, is, that 'no one can transfer to another, a greater right than he has himself;' and ' a sale *ex vi termini*, imports nothing more, than that the *bona fide* purchaser succeeds to the rights of the vendor.' " 2 Kent's Comm. 8th Ed. 380, 381.

Again : If a bailee of property for a special purpose, sells it, the *bona fide* purchaser does not acquire a valid title. 2 Camp. R. 334; 3 Atk. 44; 9 Bingham, 382, note; 2 Fairfield, 28; Story on Bail, 2d Ed. 79; see, also, Long on Sales, 167–170.

The doctrine, that possession carries with it the evidence of property, so as to protect a *bona fide* purchaser, acquiring property in the usual course of trade, is limited to cash, bank-bills, and bills and checks payable to bearer. 20 Wend. 267.

The same rule applies to purchasers of personal property, that is applied to sales or purchases made under execution ; that is to say, the purchaser only acquires the right or title of the vendor, or exe-

cution debtor, whatever that may be, and is not, therefore, a *bona fide* purchaser, in legal contemplation.

But if it be conceded, that a purchaser of personal property can protect himself under the rule that he is a *bona fide* purchaser without notice, still, the defendant in this case has not brought himself within it by his pleadings. For a clear exposition of the requirements of the law, and of the averments and proof necessary to enable a party to avail himself of the defence, that he is a *bona fide* purchaser without notice, see 12 Curtis R. 65; S. C. 10 Peters, 177.

HANDY, J., delivered the opinion of the court.

This was a bill filed in the District Chancery Court at Hernando by the appellees, to recover of the appellant's testator, two slaves, alleged to be the property of the appellees.

The facts material to the consideration of the case appear to be, that, on the 4th November, 1846, one Jesse M. Tate, for the consideration of the sum of four hundred dollars, executed a deed conveying to Nathaniel W. Dandridge, Jr., of De Soto county, in this State, the two slaves, upon trust, " that Eliza Dandridge, the mother of Nathaniel W. Dandridge, Jr., should have and be entitled to all the profits arising from the use of said slaves, during her natural life, to her own sole and separate use, free from all control of her husband ; and at her decease, the said slaves should be conveyed in fee simple to Mary Elizabeth and Eliza Dandridge, the two youngest and unmarried daughters of Eliza Dandridge, the mother of said Nathaniel W. Dandridge, Jr." This conveyance took place in Memphis, in the State of Tennessee, where the slaves then were, where the *cestuis que trust* resided, and where the trustee was on a visit at the time; and it was registered in the proper office in Tennessee, on the 20th February, 1847, and it appears to be admitted that it was delivered for registration on the 15th of that month. After the execution of the deed, the trustee took the slaves into possession and brought them into this State ; and, on the 16th February, 1847, sold and conveyed and delivered them to one Steinline, for the consideration of six hundred and fifty dollars ; and, on the 20th day of the same month, Steinline sold, and conveyed, and delivered them to Wyse, the appellant's testator,

for the sum of six hundred and seventy-five dollars. The deed of trust was never registered in this State.

The answer of the appellant's testator, in the first place, insists that the trust deed was made with reference to this State; and, although the *cestuis que trust* and the slaves were then in Tennessee, yet that the trustee resided in this State, and was so described in the deed, and that the trusts confided to him contemplated the removal of the slaves to this State, in order to the due execution of the trusts; and hence, that the deed should have been registered in this State, and was void as to Wyse, for want of such registration. 2d. He claims to be a *bona fide* purchaser from Steinline, for a valuable consideration, and without notice. 3d. He relies on the Statute of Limitations, in virtue of his possession of more than three years.

Upon the hearing, a decree was rendered for the complainants for the slaves, with hire; from which this appeal was taken.

The first position taken in the answer, appears to be untenable. It is true that the trustee resided in this State, but the slaves were in Tennessee. By the terms of the deed, Mrs. Eliza Dandridge was to have the profits arising from them, during her life. But that did not necessarily require that they should be removed to this State by the trustee, or that they should be employed or hired out by the trustee in this State. He might have done that in Tennessee, without any violation either of the letter or spirit of the deed; and his subsequent removal of them merely tends to show, that, for some reason, it was deemed proper and advisable to take them to this State. But the property was there, and the contract and conveyance were made there; and the rights of the parties must be governed by the laws of that State, unless it was clearly shown that the conveyance was intended to take effect in this State, and not there.

The next question is, whether the appellant's testator is entitled to protection as a *bona fide* purchaser, without notice; or, rather, whether the complainants' claim could be enforced against him, as such purchaser. It is distinctly alleged, in the answer of Wyse, that he purchased for a valuable consideration, and in good faith, without any notice whatever of the claim of the complainants, or of any other person, under the deed of trust; and it is also

alleged, in the answer of Steinline to the cross-bill, that he purchased from Nathaniel W. Dandridge, without notice and for a valuable consideration. There is no evidence tending in the least degree to show, that these allegations are not true in fact.

It is to be observed, that the *legal title* was in the trustee, who also had possession of the property. Having the legal title, he was invested with the *power* to sell the property, even to the prejudice of his *cestuis que trust*, so far as the rights of a party purchasing, and obtaining a conveyance of the legal title, *bona fide* and for a valuable consideration, were concerned. The rule upon this subject is well stated by Judge Tucker, thus : " A purchaser without notice, who has acquired a legal title, and paid his money, without notice of the trust, is protected in equity, even against the *cestui que trust ;* for, by obtaining the legal title, he had the law in his favor, and, having purchased and paid his money without notice, he has equal equity with the *cestui que trust.*" 2 Comm. 446. And this doctrine is amply sustained by authority (2 Fonbl. Eq. book 2, ch. 7, § 1) ; and has frequently been sanctioned by this court. *Bank of England* v. *Tarleton*, 23 Miss. 173–182 ; *Lusk* v. *McNamee*, 24 Ib. 58 ; *Henderson & Moore* v. *Warmack*, 27 Ib. 830.

But it is contended that, as the deed of trust, having been executed in another State, was not required to be registered in this State, the rights of the *cestuis que trust* are not impaired by the failure to record it here. This is true to a certain extent. The rights granted to the *cestuis que trust* by the deed, could not have been defeated, and the property rendered subject to the debts of the trustee, or of the grantor in the deed, in consequence of the mere non-registration of the deed here ; and this is the rule held in the cases of *Palmer* v. *Cross*, 1 S. & M. 48 ; *Dobbs* v. *Prewett*, 13 Ib. 431, and *Presley* v. *Rogers*, 24 Miss. R. 524, relied on for the appellees. So long as the trustee was passive, the rights of the *cestuis que trust* were unimpaired by the failure to record the deed here. But the cases cited do not go to the extent that the registration in another State is notice to a purchaser here ; nor do they sanction the principle, that a party acquiring the legal title here *by purchase from the trustee, bona fide* and for a valuable consideration, without notice, will not be protected. On the contrary, when

the trustee conveys the legal title by deed to such a purchaser, though to the prejudice of the *cestui que trust,* the purchaser will not be disturbed in his title at the instance of the *cestui que trust;* and this is settled doctrine.

It is also said that this rule, in behalf of *bona fide* purchasers, applies only to real estate. But it is also applicable to purchasers of chattels, and has been so held by this court in the cases above cited.

As to the sufficiency of the averments in the answer to entitle Wyse to the benefit of the defence, as a *bona fide* purchaser, they appear to be full and comprehensive. The answer shows the payment of the purchase-money in full, and denies that he had any notice, either in fact or in law, of the trust-deed; or that the complainants, or either of them, had any interest in, or claim to, the slaves; averring that he purchased them from Steinline in good faith, for a valuable consideration, without notice of the claim or interest of any person, in conflict with the absolute ownership of them by Nathaniel W. Dandridge, Jr. This appears to be full and explicit, and is sufficient to admit the defence.

This view of the case disposes of it, and renders it unnecessary to consider the defence of the Statute of Limitations.

The decree must be reversed, and the bill dismissed.