[Filed November 28, 1887.]

## H. P. GREGORY & CO., RESPONDENTS, v. NORTH-PACIFIC LUMBERING COMPANY, APPELLANT.

MORTGAGEE OF CHATTEL—CONVERSION MAY BE MAINTAINED BY, WHEN.—It is not necessary that a chattel mortgage should have been foreclosed in order that the mortgagee may maintain an action for the conversion of the mortgaged property. Taking possession of the property by the mortgagee is sufficient to entitle him to recover against one having no title.

PERSONAL PROPERTY—PROOF OF CONVERSION OF.—The proof of the identity of the property in actions for a conversion thereof must be reasonably certain.

CHATTEL MORTGAGE MUST DESCRIBE WITH REASONABLE CERTAINTY.—The description of property in a chattel mortgage must be reasonably certain, or the instrument will be inoperative and void.

EVIDENCE.—In proceedings to foreclose a chattel mortgage, oral proof may under proper circumstances be resorted to, to show what property was intended to be affected by the instrument.

APPEAL from Multnomah County.   Reversed.

*Strong & Strong,* for Appellant.

*G. G. Gammans,* and *A. F. Sears, Jr.,* for Respondents.

THAYER, J.—This appeal comes here from a judgment of the Circuit Court for the county of Multnomah. The respondents commenced an action in said court against the appellant, a private corporation, for the conversion of lumber. A jury trial was held therein, which resulted in a verdict in favor of the respondents and against the appellant, and upon which the judgment appealed from was entered. The proceedings had in the case, as shown by the transcript filed in this court, are as unsatisfactory as any I have met with. It is difficult to learn therefrom what the respondents sued for, or what their right of action, if they had any, was. They counted in their complaint upon a wrongful conversion of lumber; but for what kind, or amount, or what the value of it was, does not appear. The allegation is simply, that on or about March 12, 1884, their firm "were the owners of, and in possession of, a certain quantity of lumber then on the premises occupied by F. W. Lewis for mill purposes, on South First Street, in Portland, Oregon; that on March 12, 1884, the said defendant (appellant) unlaw-

fully converted and disposed of said lumber to its own use, to the damage of said H. P. Gregory & Co. in the sum of three hundred dollars." Then follows an allegation that H. P. Gregory & Co. sold and assigned their claims against the defendant to plaintiff. This is all that is disclosed in the complaint respecting the quality, amount, kind, or value of the lumber; and the respondents' claim of title is still more ambiguous.

It appears that on the seventeenth day of November, 1883, one F. W. Lewis executed to the firm of H. P. Gregory & Co. a chattel mortgage to secure the payment of a promissory note, bearing date of that day, and whereby Lewis promised to pay to the order of said firm $1,991.10, three days from such date, with interest. The property included in the mortgage consisted in the main of the machinery and fixtures in and about the mill on the premises referred to in the complaint, which property was particularly described in the mortgage, and in the description of the property therein. After the description of said machinery and fixtures occur the following words: "Also lumber piled on said premises, being more particularly described as block 113, city of Portland." Subsequently some effort was made by the firm of Gregory & Co. to foreclose the mortgage, but what it was can only be gathered from the testimony given by the late Alfred S. Frank, who was a witness on a former trial of the case.

It appears from the testimony of G. G. Gammans, Esq., a witness on behalf of the respondents, that Mr. Frank testified on the former occasion that he was present at the sale had under said chattel mortgage upon the foreclosure thereof, March 12, 1884; that L. Therkleson, at the time of the sale, admitted that some of the lumber then on the premises was there November 17, 1883, the date of the execution of the chattel mortgage; that Frank also testified that the mortgage had been foreclosed, as provided by the terms contained in said mortgage, by authority given the sheriff of Multnomah County; that the sheriff so acted at the written request of the plaintiffs; that he testified that the lumber described in the chattel mortgage, or so much of it as remained on the premises March 12, 1884, was sold by

George C. Sears, sheriff, by authority of plaintiffs, and the same was purchased by plaintiffs; that possession was taken by George C. Sears, at the request of plaintiffs, under said mortgage prior to the said sale.

This testimony was elicited by questions to the witness Gammans, all of which were objected to by the appellant's counsel as incompetent, and on various other grounds.

W. R. Crump, another witness on the part of the respondents, testified that he was foreman of a planing mill for some six years; that he was in the employ of F. W. Lewis from June 1, 1883, until March, 1884, as foreman of his mill; that he was at F. W. Lewis' mill on South First Street, Portland, Oregon, about March 1, 1884, at the time of the sale under a chattel mortgage given by Lewis to H. P. Gregory & Co.; that there was at that time on the premises, used by F. W. Lewis adjoining said mill, lumber that was there on November 17, 1883.

In answer to a question to describe it as well as he could, and to state where, on said premises, it was, the witness answered: "Under the mill in the basement, and under the dry-house, about three thousand feet of ash, maple, and alder, mostly ash. In the second story of the mill about three hundred feet of black walnut. In the mill on the first floor from fifteen hundred to two thousand feet of clear fir. In the yard above the mill from four thousand to five thousand feet of second quality of cedar." The witness further testified that rough cedar was worth about twenty dollars per thousand, clear cedar about forty dollars per thousand, and other lumber in proportion, and that in his opinion all of said lumber was worth in market, on March 12, 1884, about two hundred dollars. The witness was asked what became of the lumber, and answered that he did not know; that it was on the premises when he left there.

On cross-examination the witness was asked in substance to state his reasons why he knew that part of the same lumber on the mill-yard was on there November 17, 1883; and by and through what marks, brands, or peculiarities he could or did identify the lumber on the yard on March 1, 1884, to be the same lumber that was there November 17, 1883. In answer

thereto, he stated "that he was there in charge as foreman; that he had the lumber stored in the different locations, and none of it was likely to be moved or taken away, except under his directions; that he knew the lumber by its general appearance."

The witness was also asked if, between November 17, 1883, and March 1, 1884, Lewis sold and disposed of any of the lumber on said mill-yard; and if during the time he did not put on deposit lumber thereon. To which the witness answered as follows: "The ordinary use and replenishing of stock went on during the time, that it would be impossible to give an accurate statement as to the amount; that lumber was used as required, regardless of the time it was brought into the mill."

Said Therkleson was called as witness on the part of the respondents, and testified that he was manager of the appellant's corporation on March 12, 1884, and still was, and was authorized to superintend and manage all its business, and during all the time above referred to was so recognized. This testimony was elicited by the respondents in order, I suppose, to bind the appellant as to the admission of said witness, testified to by Mr. Frank.

The witness Mr. Therkleson was, however, called on the part of the appellant, and testified that at the date of the foreclosure of the mortgage, March 12, 1884, the respondents claimed an interest in or to the lumber in and about the mill and mill-yard, and attempted to sell the same, or their interest therein; that witness objected to said sale, and that no sale of said, or any lumber, was made under said mortgage on March 12, 1884.

The testimony I have here set out is, according to the bill of exceptions, "all the testimony concerning the sale of said lumber, and the purchase thereof by the respondents."

It is provided in the mortgage, that in case default shall be made in the payment of the note, or the property is attempted to be removed, or be attached or attempted to be assigned, then said note shall at once become due; and it shall and may be lawful for, and said Lewis thereby authorized and empowered the said Gregory & Co., executors, etc., with the aid and assistance of any person or persons, to take and carry away the mort-

gaged property, and sell and dispose of the same at public auction upon giving one week's notice of the same in a newspaper of general circulation published in said county and State, and if there were no newspapers published in said county, then in any such newspaper published in said State, and out of the money arising therefrom to retain sufficient to pay the debt, etc. There is also a further provision in said mortgage, to the effect that Lewis, his executors, etc., might retain and continue in the quiet possession of said property, and in the full and free enjoyment of it, except as thereinbefore provided.

The mortgage and alleged foreclosure, before referred to, constitute the respondents' title to the property in suit. The difficulty in the case is to ascertain, *first,* what property was mortgaged; and *second,* was the same property sold upon the alleged foreclosure, or taken possession of by the respondents in any manner for such purpose. To solve these questions, we have only the mortgage and the said testimony to look to. I do not think it necessary that there should have been a regular foreclosure of the mortgage, in order to entitle the respondents to recover for a conversion of the lumber, if identified as that referred to in the mortgage. The taking possession of it by the respondents, and subsequent conversion by the appellant without any claim of title to it, would have been sufficient; but how could the jury have known that the lumber "under the mill in the basement," the lumber "under the dry-house," or in the "second story of the mill," or on the "first floor in the mill," or in the "yard above the mill," was the "lumber piled on the premises described as block 113, city of Portland?" Conceding that the respondents, by George C. Sears, sheriff, etc., took possession of the lumber referred to by the witness Crump, and that some of said lumber was on the yard on March 1, or March 12, 1883, still that does not prove that any part of it was part of the lumber included in the mortgage, or that the parties intended should be so included. I cannot understand how the respondents had any right to claim the lumber at the mill by virtue of the mortgage, without first proving that it was the lumber referred to in the mortgage, or some distinct portion

or part of it. This question was raised in the outset of the trial. When the mortgage was offered in evidence by the respondents' counsel, the appellant's counsel objected to its introduction, upon the grounds, among others, that the description of the lumber in the mortgage was void for uncertainty. "Lumber piled on said premises" was evidently intended to mean lumber stacked, in the usual way, upon the mill premises. I do not think it was sufficiently certain to render the mortgage operative and effectual to bind any lumber, unless it were shown by extrinsic proof that Lewis, at the time the mortgage was executed, had lumber answering to such description. The description, standing alone, means nothing definite. It could, however, be rendered good by the aid of parol evidence, if the fact existed. (Jones on Chattel Mortgages, § 64.)

It seems to me that the court should have sustained the objection to the admission of the mortgage, unless the respondents' counsel offered, at the time it was made, to prove by evidence *aliunde* the lumber intended by the description. Without such proof, the mortgage was inoperative and void. (*Fish* v. *Hubbard's Adm'rs*, 21 Wend. 651.) No such offer seems to have been made; if it had been, the bill of exceptions ought to show it, in order to rebut the presumptions of error which the ruling, by itself, created. Had the proof identifying the lumber the parties intended the mortgage to cover been made at the time of its introduction, and the lumber referred to by Frank and Crump been shown to be the same lumber, or some distinct part of it, the action could have been maintained, no doubt. The other evidence in the case being what the court, in the absence of it, will presume it to have been, it was contended upon the argument that the court must presume that the respondents had possession of the lumber upon the premises, because it was so alleged in the complaint. The allegation in the complaint is that the respondents were the owners and in possession of a certain quantity of lumber. They undertook to prove it, by proving that they had a mortgage upon the lumber piled on the premises, known as block 113; that the proceedings before referred to were taken to foreclose the mortgage. This proof

simply throws us into a maze; what lumber was intended to be included in the mortgage, we have no means of ascertaining, and whether that in and about the mill was the same lumber cannot be shown.   How can it be shown, when it is not known what lumber was intended by the description or reference to lumber in the mortgage?   The admission of the truth of the allegation referred to would not, as I can see, aid the respondents.   It would be an admission that they were in possession of some lumber, but it would not necessarily follow that it was the lumber in and about the mill.

Said counsel may have intended to claim, and perhaps did claim, that the evidence showed that the respondents were in possession of the lumber last referred to—the cedar, fir, ash, alder, maple, and black walnut—and that such possession was sufficient to enable them to maintain the action against the appellant for the conversion of it, as the latter set up no title to the lumber in its favor.   Possession alone is sufficient, no doubt, to maintain such an action against a mere trespasser.   But did the respondents have possession of the lumber last referred to?   The controversy between the parties seems. to have arisen, in regard to it, at the time the sale took place.   Prior to that time, according to the testimony of Mr. Frank, the respondents had undertaken to foreclose the mortgage, by having the sheriff sell the property, or the part of it that was on the premises at the date of the execution of the mortgage, as provided in section 2, chapter 39, Miscellaneous Laws of Oregon.   Mr. Frank testified that "so much of it as remained on the premises March 12, 1884, referring to the lumber mentioned in the mortgage, was sold by George C. Sears, sheriff, by authority of plaintiffs, and the same was purchased by plaintiffs."   He had before testified "that possession was taken by George C. Sears, at request of plaintiffs, prior to the said sale."

It appears, however, that the lumber was where it had been deposited long before, at the time of the sale, and at the time the appellant is charged with having converted it; that evidently it had not been removed, or taken out of Lewis' possession. Sears, therefore, could only have taken formal possession of it,

and as preliminary to, and for the purpose of selling it by virtue of the power conferred upon him by the statute, or possibly that contained in the mortgage.   In either case, however, the respondents did not obtain such a possession of the lumber as would enable them to maintain the action; at most it was no more than a constructive possession, which would not be sufficient without establishing a further right, and which they could only establish under their pleadings, by identifying the lumber with that referred to in the mortgage.   That, in my opinion, they did not do.   A possession of personal property, in order to be sufficient to enable a party to maintain an action for its conversion, should be absolute and complete.   I do not think that the respondents had any such possession in this case.

The counsel for the respondents contended at the hearing, and claim in their brief, that the notice of appeal herein does not specify the grounds of error upon which the appellant intended to rely on the appeal with sufficient certainty.   The specification is very general and loose, and probably would not stand the test of a number of the decisions of this court heretofore made upon that question.   The court latterly, however, has been inclined to pursue a more liberal course in such matters.   It has been more disposed to retain an appeal, and consider the merits of it, where the error or defect does not affect the substantial rights of the adverse party.   The spirit of the Code is opposed to the application of stringent rules in the matter of form.   It favors more the course and policy of considering and adjudicating upon the matters of substance, and of disregarding mere technicalities.

A notice of appeal must specify the grounds of error relied on with reasonable certainty.   The statute requires that it do so, but at the same time, it requires "that the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."   If the respondents had been misled, in consequence of the loose and general mode adopted in pointing out the errors alleged, the court would feel compelled to refuse to hear the appeal; but they have not been prejudiced evidently in

this case in consequence of any such practice. They were represented here by an able counsel, who was well prepared, and has ably discussed every question presented in the record. And if the court should fail to consider a material point involved in the matter, or adopt some view inconsistent with the facts connected therewith, its attention can be called to it by a petition for a rehearing, which secures a further consideration of the subject. It is obvious that the contention of the parties was in regard to lumber Lewis had on hand when the attempt was made to foreclose the mortgage. The burden of proving that it was included in that instrument devolved upon the respondents, and should have been made when they sought to establish their rights to it by virtue thereof. The mortgage upon its face secured to them no right to any lumber, without proof identifying the lumber intended, and was confined to lumber "piled" on the premises referred to. I think it was error to allow the mortgage to be introduced in evidence, when objected to, upon the grounds mentioned, without requiring such proof to be made. In no other way could the mortgage be rendered effectual for any purpose, and its competency depended upon the production of such proof to accompany it, and locate and apply the description contained therein.

In *Fisk* v. *Hubbard's Adm'rs, supra,* Judge Cowen used the following language: "The learned judge at the circuit thought the description of the property in the covenant so entirely uncertain that the instrument was inoperative and void. *And it is clearly so, if we are bound to stop with reading it, and cannot go beyond the contract in search of its meaning.*" To "go beyond the contract in search of its meaning" is to ascertain the subject-matter to which it refers through the means of extrinsic evidence, which, in connection with the instrument, establishes the right. The extrinsic evidence is essential to the completion of the meaning of the instrument, and the latter can be admitted in proof only on condition that the former is introduced. If the Circuit Court had allowed the introduction of the mortgage upon condition of the introduction of the character of evidence referred to, we might have presumed that it had been introduced; but the ruling

was absolute. The effect of it was that the mortgage was competent proof in itself, and required no extraneous evidence to ascertain the lumber to which the description applied. The ruling could not have failed to mislead the jury. Under this view the judgment appealed from should be reversed, and the case remanded for a new trial.