[Filed May 3, 1889.]

## LEE, RESPONDENT, v. COLE AND STRUBLE ET AL., APPELLANTS.

MORTGAGED PROPERTY — IDENTIFICATION OF — WHEN MORTGAGED. — In order to mortgage property, so as to create a lien upon it, such property must be ascertained and identified at the time of the execution of the instrument.

EQUITABLE MORTGAGE — IDENTIFICATION OF THE PROPERTY. — Where an equitable mortgage is claimed as the result of an agreement, there must be, at the time such agreement was made, such an identification of the property as that the equitable mortgagees may say, with a reasonable decree of certainty, what property it is that is subject to their lien.

APPEAL from Benton County.

*W. S. McFadden,* for Respondent.

*J. W. Rayburn,* for Appellants.

LORD, J. — This is a suit to foreclose a chattel mortgage.

It being alleged in the complaint that the defendant had or claimed some interest therein, they answered, in substance, as follows: That the defendants and plaintiff, as sureties for defendants Cole and Struble, executed and delivered their note for four hundred dollars to one Irvine; that Cole and Struble promised to give the plaintiff and defendants a chattel mortgage on the personal property mentioned in the complaint of the plaintiff within a reasonable time, and that although often requested, he had neglected and failed so to do until long after the plaintiff's mortgage was executed, and that plaintiff had full knowledge of such agreement when he took his said mortgage; that defendants, including the plaintiff, were compelled and did pay said note according to each one's proportion; that subsequently Cole and Struble executed and delivered to the defendants, including the plaintiff, a

chattel mortgage to secure such sum upon the property described in the plaintiff's complaint, which was intended by Cole and Struble and accepted by the defendants as and for the mortgage agreed to be given, all of which is denied by the plaintiff excepting the making of the mortgage by Cole and Struble to plaintiff and defendants.

The court rendered a decree foreclosing both mortgages, but adjudged the plaintiff's mortgage to be the first mortgage, etc. The record presents several questions, and the evidence in relation to them is vague, often conflicting, and somewhat unsatisfactory.

It seems that the sum of money, for which the defendants claim that their mortgage ought to be considered prior to the plaintiff's mortgage, was procured by the names of the defendants and the plaintiff as security, to establish a party newspaper, but the evidence in respect to the agreement of Cole and Struble to give a chattel mortgage to secure the same is disputed by one of them, and the evidence of some of the other defendants indicate that their knowledge of such promise was obtained after the signing of the note.

It is no doubt true that the defendants Rayburn and Johnson understood that a chattel mortgage was to be given, and they testify such was the condition upon which they signed. The defendant Grimm's testimony is direct that he had no conversation upon this subject with Struble until after the signing of the Irvine note as one of such security, and that he had had no conversation with the plaintiff either before or after the signing of such note.

The plaintiff Lee is positive that no mention was made of a chattel mortgage as security at the time he agreed or became a surety upon the note; but the defendant Rayburn testifies that he told him that it was the understanding that such a security was to be given.

Looking at the face of the evidence, the impression comes that it is probable that some one of the defendants, knowing or being advised that Cole and Struble proposed to start a newspaper, and to forward that enterprise, did the principal part of the business with them, and in securing the signatures as security upon their note, and that the others derived their information principally through him.

However this may be, it is clear that the defendants Cole and Struble were proposing to start a paper, and to secure the means to found their project, agreed to run the paper in a party interest, and this the plaintiff Lee testifies is the ground upon which he became surety upon the note. But if we assume that the defendants Cole and Struble did agree to give the chattel mortgage to secure the defendants and the plaintiff against loss on account of signing the note, two other questions arise, of importance upon this record, viz.: 1. What was the property which the chattel mortgage was intended to secure? and 2. Whether the plaintiff is chargeable with knowledge of such agreement to give such chattel mortgage upon such property.

In order to mortgage property so as to create a lien upon it, such property must be ascertained and indentified at the time of the execution of the instruments. Here the claim is, that the mortgage subsequently executed was only taken as and for the mortgage originally agreed to be given at the time the note was signed as security, etc., and is therefore in this view an equitable mortgage, and that to create a lien upon property, such property must have been ascertained and identified, at least with a reasonable decree of certainty at the time such agreement was made, and to which it owes its existence.

"There must be," said Folger, J., "an identification of

XVII. OR.—36

the property, so that the equitable mortgagee may say, with a reasonable decree of certainty, what it is that is subject to his lien." (*Payne* v. *Wilson*, 74 N. Y. 352.)

The evidence discloses that the property, whatever that was, to furnish the security was not in the state or county, or in possession of Cole and Struble, but was represented in a general way to be in San Francisco, or on the way to this state from that place, but of what it consisted, except that it was styled the "Chronicle plant," which was supposed to mean everything necessary to run the Chronicle newspaper, does not distinctly appear. In fact it does not appear definitely when the plant was ordered, and of what it consisted, and no one pretends to any specific information concerning it, or could, at the time the alleged agreement was made, enumerate in the most general way what it was that was subject to his lien.

It is true, some of them say that they mean by the "plant" all those things which were subsequently included in the mortgage executed to them, or included the property mentioned in the pleadings, but the evidence shows that after the agreement was made, out of which the equitable mortgage originated, that much of the property to which they refer was purchased afterwards, and added to the firm property of Cole and Struble. And according to Mr. Struble's testimony, this was "nearly all of the job material, including job printing machine, several racks, cases, blank paper stock, job printing inks, and numerous other fixtures and furniture to the job department; also important and necessary additions to the newspaper plant proper, including about one hundred pounds of long primer type, a large supply of leads, slugs, etc." So that the mortgage executed to the plaintiff, and the mortgage executed subsequently to the defendants and plaintiff, included much more material than could have possibly been contemplated by the agreement, and

the evidence of the defendants, although given in the utmost good faith, shows that they did not know, nor could have told, as equitable mortgagees, at the time of the agreement, with a reasonable degree of certainty, what property it was that was subject to the lien of their equitable mortgage.

"In order," says Mr. Pomeroy, "that a lien may arise, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation." (Pomeroy's Eq. Jur., sec. 1235.)

It is too manifest for controversy that the evidence fails to disclose the particular property to which the alleged agreement refers, so as to identify it, and to create a security. Under such circumstances, how is the court to know to what property the lien of the equitable mortgage applies, or how much was included in the plaintiff's mortgage which belonged to the "Chronicle plant" when such alleged agreement was made. Yet to furnish the relief asked for by the defendants, this duty was incumbent upon them, and if they have failed to establish it, the court must deny their prayer.

As to the plaintiff's knowledge of the alleged agreement at the time he took his mortgage, the evidence is conflicting, but however this may be, the facts show that he could not have known what property was to be subject to the lien. The circumstances indicate that Cole and Struble were anxious to secure the money to start the paper, and that the defendant Rayburn was the enterprising and managing man that secured it for them, and no doubt much that was talked between them and each of them with the others was supposed to be known by all, and in

·this way honest·differences as to the facts came·about. It often happens ·that ·differences ·arise and misunderstandings ·occur· as to·a·state of facts between men whose character ·for integrity· and .probity is beyond reproach, ·and while ·the court ·must· often press its way through conflicting testimony to a result, it does not imply: a ·want of good faith or honesty ·in those whose testimony·did not ·corroborate ·that ·result. ·Assuming, however, the equitable right established,· as claimed by the agreement, the evidence fails to disclose·that it ·was made effective as a ·security against any specific property which the·court could ascertain and ·identify, and subject to the ·lien ·of such mortgage.

The decree must be affirmed.