Argued November 4, decided December 15, 1908.

## AYRE v. HIXSON.

[98 Pac. 515.]

PLEADING—AMENDMENT—ANSWER TO AMENDED COMPLAINT—SCOPE.

1. Where, in a suit to foreclose a mortgage, all the defendants answered jointly the original complaint, but it was thereafter amended, and defendants reserved the right, prior to the taking of evidence, to answer the amended complaint, in doing so they were not bound to adhere to the defenses alleged in their original answer, but could set up any defense otherwise available to them or either of them.

EVIDENCE — DOCUMENTARY EVIDENCE — CERTIFICATE OF RECORD — ACKNOWLEDGMENT—"CONVEYANCE DULY ACKNOWLEDGED."

2. Section 5357, B. & C. Comp., made applicable to chattel mortgages by Section 5634, requires the county clerk to certify on every conveyance recorded, the time when received and the place of record; and Section 5355

makes a conveyance duly acknowledged, competent evidence without further proof. *Held*, that such certificate was no part of the "conveyance duly acknowledged," but was an independent instrument, which must be identified and offered in evidence in order to be evidence of the time and place of record.

CHATTEL MORTGAGES — RECORDING — MORTGAGE OF BOTH REAL AND PERSONAL PROPERTY — FAILURE TO RECORD — EFFECT AS AGAINST SUBSEQUENT PURCHASERS.

3. Section 5631, B. & C. Comp., requires chattel mortgages to be recorded in a book kept for that purpose, and a general index thereof kept, but if the instrument is to operate both as a mortgage of realty and personalty, it must be recorded in the records of realty mortgages, and the recorder shall index it in general index of personalty mortgages, in which case it need not be recorded in the records of mortgages of personal property; and Section 5633 provides that every mortgage of personalty, alone or with real property, if not accompanied by immediate delivery and continued change of possession, or not recorded as provided in the previous section, shall be void as against subsequent purchasers in good faith for valuable consideration. *Held*, that where a mortgage of both realty and personalty was recorded in the realty records, but was not indexed in the general index of chattel mortgages, it was not constructive notice to a subsequent purchaser for value.

CHATTEL MORTGAGES—FORECLOSURE—DEFENSE—INNOCENT PURCHASER FOR VALUE.

4. In a suit to foreclose a chattel mortgage, where defendants claim as innocent purchasers, under Section 5633, B. & C. Comp., providing that every mortgage of realty and personalty, if not accompanied by immediate delivery and continued change of possession, or not recorded as required by Section 5631, shall be void as against subsequent purchasers, defendants must allege that they had not actual or constructive notice of the mortgage or claim, and that they are innocent purchasers for value.

CHATTEL MORTGAGES — FORECLOSURE — BURDEN OF PROOF — INNOCENT PURCHASERS.

5. The burden is on defendants to prove that they were innocent purchasers, without actual or constructive notice.

CHATTEL MORTGAGES—FORECLOSURE—EVIDENCE—NOTICE OF MORTGAGE.

6. In a mortgage foreclosure suit, where some of defendants claimed as innocent purchasers without notice, evidence *held* to show that they had notice when they purchased that plaintiff had mortgages on the chattels, so as to put them on inquiry.

CHATTEL MORTGAGES—TRANSFER OF PROPERTY—"PURCHASER IN GOOD FAITH."

7. Under Section 5633, B. & C. Comp., making every mortgage of personal property, alone or with real property, if not accompanied by immediate delivery, and continued change of possession, or not recorded, either as a personalty mortgage or as a realty mortgage, and indexed as a personalty mortgage, void as against subsequent purchasers in good faith, though a mixed mortgage was not indexed as a personalty mortgage, a purchaser having actual notice of the mortgage was not a "purchaser in good faith" within the statute.

CHATTEL MORTGAGES—FORECLOSURE—EVIDENCE—SUFFICIENCY.

8. In a suit to foreclose a chattel mortgage on sheep, where defendants claimed as innocent purchasers of a part of the sheep, evidence *held* to show that a large part of the sheep purchased by them were the increase of sheep mortgaged.

CHATTEL MORTGAGES — OPERATION — PROPERTY MORTGAGED—ANIMALS
AND INCREASE

9. A chattel mortgage is merely a lien in this State, and does not transfer title, and hence, under the rule that the offspring belongs to the mother, the increase of sheep mortgaged belong to the mortgagor, unless the increase was also mortgaged.

CHATTEL MORTGAGES—OPERATION—TITLE TO PROPERTY.

10. A chattel mortgage does not tranfer title to the mortgaged property in this State, but is merely a lien.

CHATTEL MORTGAGES—TRANSFER OF PROPERTY—RIGHTS OF PURCHASER
WITH NOTICE.

11. Where a number of sheep were mortgaged to secure advances, to pay which the wool was to be delivered to the mortgagee, and other sheep were leased by the mortgagee to the mortgagors, the wool from all the sheep having been delivered over to the mortgagee, the proceeds of the unincumbered portion thereof, and the price of certain sheep sold to the mortgagee, could be applied to the payment of the advances, regardless of the terms of the mortgage and lease, so far as one subsequently purchasing a part of the sheep from the mortgagors with notice was concerned.

CHATTEL MORTGAGES—REQUISITES—IDENTIFICATION OF PROPERTY.

12. To create a lien by chattel mortgage the property must be identified at the time of the execution of the mortgage.

CONFUSION OF GOODS—EFFECT—INTERMIXTURE BY MISTAKE.

13. Where goods are commingled by mistake, or accident, or by the consent of the owners, neither owner will lose his property, but they will be treated as tenants in common, in proportion to their interests.

CONFUSION OF GOODS—WRONGFUL INTERMIXTURE.

14. Where goods are wrongfully commingled, the wrongdoer will lose his interest therein unless he can identify his goods.

CONFUSION OF GOODS—RIGHTS OF PARTIES—MORTGAGOR AND MORTGAGEE.

15. Where mortgaged sheep were so commingled with sheep of the mortgagor through his fault that they could not be identified and separated, he must suffer whatever loss results.

CONFUSION OF GOODS—RIGHTS OF PARTIES—MORTGAGOR AND MORTGAGEE.

16. Where mortgagors of sheep intermingled the mortgaged sheep with others not mortgaged, so that the mortgaged sheep could not be identified, though any resulting loss would fall on the mortgagors, only sufficient of the commingled property can be taken to pay the mortgage debt.

CONFUSION OF GOODS — TRANSFER OF PROPERTY — RIGHTS OF PURCHASER
WITH NOTICE.

17. A purchaser, with notice, of mortgaged chattels which were commingled by the mortgagor with other chattels not mortgaged, stands in the same position as the mortgagor, and the mortgagee, as against him, can take all of the property necessary to satisfy his debt.

From Baker: WILLIAM SMITH, Judge.

This is a suit by W. G. Ayre against Elijah Hixson, L. M. Hixson, Russel Ames and Brasfield Bros. to foreclose four mortgages which include both real and personal property. The defendants Brasfield Bros. were made par-

ties on account of their being in possession of certain personal property, which plaintiff contends are included in the mortgages given by the defendants Hixson & Ames. There was a decree in favor of plaintiff, from which the defendants, Brasfield Bros., alone appeal.

Statement by MR. JUSTICE EAKIN.

This is a suit to foreclose four mortgages, which include both real and personal property. It appears from the record that about November 26, 1901, plaintiff sold to the defendants, Hixson & Ames, about 530 ewes, and lent to them $1,572, evidenced by a promissory note due three years after date, with interest at 10 per cent per annum after November 26, 1902. For the purpose of securing the payment of the loan Hixson & Ames executed to plaintiff a mortgage upon "all our sheep described as follows: Five hundred thirty (530) ewes, part of said ewes being marked with an underbit in each ear, and part of them marked with an underbit in left ear, and the increase of said sheep"; also upon certain real property. Thereafter, on July 18, 1903, plaintiff leased to Hixson & Ames 1,000 yearling ewes for the period of three years from October 14, 1903, at an annual rent of $750. Hixson & Ames were to pay all expenses of running the sheep, and were to keep them free from liens or incumbrances, and to deliver the wool clip to Ayre, who was to sell it, and upon the receipt of the selling price was to retain therefrom sufficient to pay any balance due on the notes given for the rent; and, in case of failure of Hixson & Ames to keep the covenants of this agreement, Ayre was to take possession of the sheep and their increase, and to hold such increase until the amount of damages caused by any breach of the terms of the lease should have been adjusted. As evidence of the annual rent of $750, Hixson & Ames executed to Ayre, three promissory notes, due July 1, 1904, July 1, 1905, and July 1, 1906, respectively, and secured the payment thereof by a mortgage on certain real estate.

On October 14, 1905, plaintiff leased to Hixson & Ames
1,032 yearling ewes for the term of three years at an
annual rent of $1 per head, evidenced by three promis-
sory notes: One for $1,249, due on demand; one for
$1,032, due one year after date; and one for $1,032, due
two years after date—with interest at 10 per cent per
annum. The terms as to the running expense, wool clip,
etc., were the same in every respect in this lease as in
the lease of the 1,000 head of ewes above mentioned.
From the price of the wool Ayre was to retain sufficient
to pay any balance due on the notes mentioned, together
with any advances made by himself or expenses incurred
on account of the lease; and on the same date, as security
for the payment of the notes above mentioned, Hixson
& Ames executed to Ayre a mortgage upon certain real
property, and also "together with the increase from all
the sheep rented to the said mortgagors by a lease, herein-
after mentioned, of even date herewith; also 14 head of
bucks turned over with said sheep; and also all sheep
belonging to said mortgagors upon which said mortgagee
has no mortgage or lien." There was included in the
mortgage also the further sum of $500, as indemnity
against loss or damage caused by failure of Hixson &
Ames to keep the covenants of this lease. It was pro-
vided that after the payment of any of the three notes
the mortgage should remain in full force and effect as
indemnity in the sum of $3,813 to the mortgagee until
all covenants of the lease should have been fulfilled;
and if the mortgagors should fail to pay the sums due,
or fail to comply with any of the covenants set forth in
the lease, the mortgagee might at the time of such failure
to pay, or breach of the covenants in this mortgage or
lease, compel payment for the rent, and any damages
which he might suffer by reason of such breach; and, if
Hixson & Ames should suffer any lien to be placed upon
this band of ewes, the mortgagee might at his option

make payment thereof, and the same should become a part of the debts secured thereby.

The fourth mortgage was given February 12, 1907, by Hixson & Ames to Ayre to secure a note of $1,000, dated October 14, 1906, due one year after date, upon "all our sheep, or sheep in which we have any interest, consisting of about 4,000 head thereof, together with the increase therefrom, and the wool therefrom and thereon during the life of this mortgage, or any sheep we may hereinafter acquire during said time"; also upon the same lands described in the first, second, and third mortgages. During the time of these dealings between plaintiff and defendants, Hixson & Ames, plaintiff received from them the wool clip each year, beginning with the year 1904, and purchased from them about 779 sheep, some hay, and a few other small items, the proceeds of which he applied at first as credits on an open account and to the cancellation of notes for advances and expenses. The remainder was applied to the payment of the notes especially secured by the mortgages.

On June 15, 1905, plaintiff and defendants, Hixson & Ames, had a settlement, in which all the credits up to that time were adjusted and applied, leaving the face of the note of the mortgage of 1901 and the notes of the mortgage of 1903 unpaid, and canceling all other prior obligations.

The defendants Brasfield Bros. were made defendants in this suit because they were in possession of sheep which plaintiff contends are included in the mortgages. All the defendants joined in an answer to the complaint, and at the time of the commencement of the trial plaintiff amended his complaint by inserting pages 4 and 4½, which concerned only the second cause of suit, and the defendants reserved the right at that time thereafter to move against or answer the amended complaint. The testimony was all taken before the answers were filed, and at the time for the argument defendants Brasfield

Bros. filed a separate answer, to which no objection was taken at the time, and plaintiff replied thereto on the same day. The cause was tried, findings were made in favor of the plaintiff, and a decree was rendered thereon; and defendants Brasfield Bros. alone appeal.

Affirmed.

For appellants there was a brief over the names of *Messrs. Hart & Nichols,* with an oral argument by *Mr. Julius N. Hart.*

For respondent there was a brief over the names of *Mr. Orville B. Mount* and *Messrs. Butcher, Clifford & Correll,* with oral arguments by *Mr. Mount* and *Mr. Morton D. Clifford.*

Mr. Justice Eakin delivered the opinion of the court.

1. At the outset plaintiff contends that because the defendants Brasfield Bros. joined with Hixson & Ames in the original answer, and therefore could make no defense not common to all the defendants so answering, they cannot now by their several answers avail themselves of the defense that they were innocent purchasers. At the time the complaint was amended, defendants, by consent of the court, reserved the right to move against or to answer the same at a subsequent time. This was prior to the taking of any evidence; and in filing their answer to the amended complaint they were not bound to adhere to the defenses of the original answer, nor were they precluded by the several answers from making any defense otherwise available to them.

2. The first contention of the defendants Brasfield Bros. is that there is no evidence before the court that any of the mortgages were recorded, and that the burden is upon plaintiff to prove notice thereof. At the trial the original mortgages were identified and offered in evidence. On the back of these is certified the time when they were received, and a reference to the book and page

in which they were recorded, but such certificate was
not identified or offered in evidence. Section 5357, B.
& C. Comp., is expressly made applicable to chattel
mortgages by Section 5634, B. & C. Comp., and provides
that the county clerk shall certify on every conveyance
recorded, the time when received and the place of record;
and every conveyance shall be considered recorded at
that time. Such a certificate would be evidence of the
time and place of record, if offered in evidence; but not
being identified or offered, it is not before the court.
This certificate is no part of the mortgage identified by
the witness nor is it part of the "conveyance duly
acknowledged," which is made competent evidence with-
out further proof by Section 5355, B. & C. Comp., but
is an independent instrument executed at a different
time and by a different person. In *Drexel* v. *Murphy,*
59 Neb. 210 (80 N. W. 813), it was held that a certified
copy of a chattel mortgage offered in evidence was not
an offer of the indorsement thereon of the filing. To the
same effect is *Fuller* v. *Brownell,* 48 Neb. 145 (67 N. W.
6). Therefore, the certificate of record indorsed on the
mortgage is not before the court as evidence of such
record.

3. The defendants also objected to the mortgage of
February 12, 1907, for the reason that it is not recorded
as provided by Section 5631, B. & C. Comp., viz., that
it is recorded in the record of mortgages of real prop-
erty, but not indexed in the general index of chattel
mortgages. That section provides that chattel mortgages
shall be recorded in a book kept exclusively for that
purpose, and a general index thereof kept by the recorder;
but if the instrument is "intended to operate as a mort-
gage of real property, as well as a mortgage of personal
property, such instrument may be recorded in the records
of mortgages of real property, and such county clerk or
recorder of conveyances in whose office the same is
recorded, shall index the same in the general index of

mortgages of personal property or chattel mortgages as well as in the general index of mortgages of real property, and the same need ·not be recorded in the records of mortgages of personal property." Section 5633, B. & C. Comp., provides that every mortgage of personal property alone or with real property, if not accompanied by immediate delivery and continued change of possession, or which shall not be recorded as provided in Section 5631, shall be void against subsequent purchasers in good faith for a valuable consideration. When a mortgage is intended as a mortgage of both real and personal property, only when it is recorded in the record of mortgages of real property and indexed in the general index of chattel mortgages is the mortgagee excused from having it recorded in the book of chattel mortgages. The general index of chattel mortgages is the only means provided by Section 5631 by which third parties may find a chattel mortgage recorded only in the record of mortgages of real property. Therefore, by the terms of the statute the indexing in such a case is a part of the recording, and that mortgage was not at the time of the purchase by Brasfield Bros. so recorded as to be constructive notice thereof.

4. However, defendants Brasfield Bros., as a defense to the mortgages set out in the complaint, which are prior to their purchase, affirmatively allege in their answer that at the time of their purchase they "had no knowledge or notice, either actual or constructive, that plaintiff had or claimed any mortgage or other claim or lien upon or against said sheep, or any thereof, and that said defendants were and are innocent purchasers for value of said sheep." This is a necessary allegation under the provisions of Section 5633, B. & C. Comp., above mentioned, and the burden is upon defendants to prove it.

5. It is said in *Haines* v. *Connell,* 48 Or. 469, 474 (87 Pac. 265: 88 Pac. 872: 120 Am. St. Rep. 835), that the denial of the averments of the complaint did not entitle

defendants to make the defense of a *bona fide* purchaser. That was affirmative matter which they were required to plead in their answer, notwithstanding the allegations of the complaint. It is also so held in *Rhodes* v. *McGarry,* 19 Or. 222 (23 Pac. 971) ; *Jennings* v. *Lentz,* 50 Or. 483 (93 Pac. 327), and in many other cases in this court. In *Laurent* v. *Lanning,* 32 Or. 11 (51 Pac. 80), it is held necessary for the attaching creditor to show that plaintiffs' "mortgage was unrecorded at the time he in good faith acquired the judgment; that is to say, in order to advance his equity above that of the plaintiffs, he must show plaintiffs' laches in not complying with the terms of the statute under which he claims superior right, and this imposes upon him the duty of showing the want of record." Among the decisions of other states there is a want of uniformity upon this point. The following, however, support this view: *Wyse* v. *Dandridge,* 35 Miss. 672 (72 Am. Dec. 149) ; *Fowler* v. *Merrill,* 11 How. 375 (13 L. Ed. 736) ; *Diemer* v. *Guernsey,* 112 Iowa, 393 (83 N. W. 1047) ; *Wright* v. *Larson,* 51 Minn. 321 (53 N. W. 712: 38 Am. Rep. 504) ; *Ransom* v. *Schmela,* 13 Neb. 73 (12 N. W. 926). Therefore, the burden is upon the defendants claiming to be purchasers without notice of the prior liens of plaintiff to prove such want of notice, either actual or constructive. The answer alleges want of notice, and there is some evidence tending to show that the purchase was made without actual notice, but not that it was without constructive notice. The defendant Geo. Brasfield testified that the 1905 mortgage was recorded, and there is no evidence that it or the two prior ones were not duly recorded.

6. As to the question of actual notice to defendants Brasfield Bros., Oxman testified that he had had a conversation with the defendant Geo. Brasfield, some time in September, before the delivery of the sheep, near the Stockman's Saloon down on Front street, in which conversation Geo. Brasfield, referring to the purchase of the

sheep, said that he had a written contract for such purchase, on which money had been paid, saying, "I says to him, 'Mr. Ayre has this stuff mortgaged for more than it is worth.'" Oxman further testified that he had a second conversation with him after the delivery of the sheep, in the fore part of October at the corner of Maine street on Washington, across from the Geyser Grand Hotel, when he again called Geo. Brasfield's attention to the mortgage, and the latter said that he had hired an attorney to look it up, and that there was no mortgage given on the property he bought; and Geo. Brasfield admits that he had such a conversation with Oxman near Griswold's store on the 23d of October, after the delivery of the sheep and payment therefor.

7. Defendant Ames says that at the time Brasfield Bros. bought the sheep he told the defendant Jim Brasfield that Ayre had some mortgages on the yearlings. We think the conclusion is unavoidable that Brasfield Bros. had notice when they purchased the sheep, and before they paid for them, that Ayre had mortgages upon all or upon some of them. This was sufficient to have put them on inquiry, which would have led to a disclosure of all the facts in relation thereto. Therefore the defendants Brasfield Bros. are not purchasers in good faith within the provisions of Section 5633, B. & C. Comp.

8. The mortgage of 1901 was upon the sheep described and their increase. The mortgage of 1903 does not include any sheep. The mortgage of October 14, 1905, includes the increase of 1,032 yearling ewes, described in the lease of that date, also all sheep belonging to the mortgagors upon which the mortgagee has no lien. This recognizes that there were other sheep mortgaged to Ayre. It does not in terms include the increase of the sheep mentioned in the last description; that is, it includes all sheep then in defendants' possession, and the increase thereof, except the increase of those accumulated from the 1,000 head leased in 1903. The mortgage of

1907 covers all sheep owned by the defendants, and the increase thereof, and includes all the sheep purchased by the defendants Brasfield Bros. Ames, in his testimony, says that none of the sheep described in the 1901 mortgage were included in the sale to Brasfield Bros. But this cannot be true, as the increase of the sheep included in the mortgage of 1901 for the year 1902 was 400 lambs, and for 1903, 500 lambs, and it is reasonable to suppose that this increase prospered as well as the others. He says that they sheared 2,200 or 2,300 sheep in the spring of 1904, which included 1,000 head leased in October, 1903. Therefore, more than half of the sheep in defendants' possession in the spring of 1904 were owned by defendants and were included in the mortgage of 1901; and the conclusion is unavoidable that a large proportion of the sheep sold to Brasfield Bros. must have been the increase of the original stock of 1901 and of the 1,032 sheep leased in October, 1905, and, therefore, included in the mortgages of 1901 and 1905, and that all were included in the mortgage of 1907.

9. Plaintiffs contend that the mortgage of 1905 includes the increase of all sheep mentioned therein, on the theory that the offspring of female animals belongs to the owner of the mother. This is true in most states where the chattel mortgage transfers the title to the mortgagee. *Northwestern Bank* v. *Freeman*, 171 U. S. 620 (19 Sup. Ct. 36: 43 L. Ed. 307) ; Jones, Chattel Mtgs. (5 ed.) 149. With the exception of the State of Texas, we believe that all the courts so holding, do so on the theory that the mortgagee holds the title to the mortgaged property. In Texas the mortgage does not transfer the title, but is only a lien upon the property. The court in that State holds that, as between the parties at least, the lien will also include the increase, even when not especially mentioned. *Bank* v. *Mortgage Co.*, 86 Tex. 636 (26 S. W. 488). But, under the rule that the offspring belongs to the owner of the mother, the increase

in Oregon belongs to the mortgagor, unless the increase is also mortgaged, as he is the owner of the mother. This is the holding in *Shoobert* v. *De Motta,* 112 Cal. 215 (44 Pac. 487: 53 Am. Rep. 207) ; *First Nat. Bank* v. *Erreca,* 116 Cal. 81 (47. Pac. 926: 58 Am. Rep. 133), and *Battle Creek Bank* v. *First. Nat. Bank,* 62 Neb. 825 (88 N. W. 145: 56 L. R. A. 124), where the mortgage is only a lien.

10. In Oregon a chattel mortgage does not transfer the title to the mortgaged property, but is only a lien thereon (*Chapman* v. *State,* 5 Or. 432; *Knowles* v. *Herbert,* 11 Or. 54, 240: 4 Pac. 126), and unless the mortgage in terms includes the increase it is not subject to the mortgage lien.

11. These mortgages are security not only for the payment of the notes therein mentioned, but also for the fulfillment of the covenants of the respective leases, which would include the care of the sheep for which the advances were made. The wool of some of the sheep was probably not covered by the mortgage or by the terms of the lease; that is, the wool from such of the increase as was not included in the mortgage. The wool from all the sheep owned by the defendants having been delivered to Ayre, the proceeds of the unincumbered portion thereof and the price of the sheep sold to him could well be applied by Ayre to the payment of advances regardless of the terms of the mortgages or leases, and Brasfield Bros. have no ground for complaint.

12. Defendants urge that to enable plaintiff to foreclose his mortgages he must identify the property included therein. The rule is that to create a lien on personal property by chattel mortgage, the property must be identified at the time of the execution of the instrument. This is the point involved in *Gregory & Co.* v. *N. P. L. Co.,* 15 Or. 447 (17 Pac. 143), and *Lee* v. *Cole and Struble,* 17 Or. 559 (21 Pac. 819), relied upon by defendants, but not the difficulty here.

13. The property when mortgaged was identified; and the question now is, whether plaintiff can or is required to identify sheep properly mortgaged with which the mortgagor in possession has commingled some of his own sheep. It is a question of confusion of goods. The remedies of the parties owning portions of the property so commingled depend upon the circumstances of the commingling; namely, whether by consent of the owners, by mistake or accident, or whether it was the result of willful, careless, or fraudulent conduct. In the first two cases, as between the owners, neither of them will lose his property, but each will be treated as a tenant in common in proportion to his interest.

14. But where willful or wrongful, the commingler or wrongdoer forfeits his interests unless he can identify his goods. Jones, Chat. Mtg. (5 ed.) § 481; 6 Am. & Eng. Enc. Law (2 ed.), 592; *Ilfield* v. *Ziegler*, 40 Colo. 401 (91 Pac. 825) ; *Fuller* v. *Paige*, 26 Ill. 358 (79 Am. Dec. 379) ; *Kreuzer* v. *Cooney*, 45 Md. 582; *Horne* v. *Hanson*, 68 N. H. 201 (44 Atl. 292) ; *Root* v. *Bonnema*, 22 Wis. 539; *The Idaho*, 93 U. S. 575 (23 L. Ed. 978) ; *Alley* v. *Adams*, 44 Ala. 609; *Willard* v. *Rice*, 11 Metc. (Mass.), 493 (45 Am. Dec. 226). See, also, extended note to *Pulcifer* v. *Page*, 54 Am. Dec., at page 591.

15. If it were possible to ascertain the relative proportion of the sheep which belonged to the mortgagor and mortgagee, respectively, each might take his proportionate share of the whole; but from the testimony of the mortgagors this is not possible, as they could not even approximate the number of sheep not covered by the mortgage, and it is their fault that there is confusion, and they must suffer the loss. Jones, Chat. Mtg. § 481.

16. This works no hardship on Hixson & Ames, as only sufficient property can be taken to pay their debts to Ayre.

17. As we have found that Brasfield Bros. purchased with notice of the mortgages, they are in no better position than the mortgagors, and the mortgagee may take the entire property from such purchasers. Jones, Chat. Mtg. § 481; *Iifield* v. *Ziegler*, 40 Colo. 401 (91 Pac. 825) ; *Adams* v. *Wildes*, 107 Mass. 123; *Kreuzer* V. *Cooney*, 45 Md. 582; *Horne* v. *Hanson*, 68 N. H. 201 (44 Atl. 292) ; *Fuller* v. *Paige*, 26 Ill. 358 (79 Am. Dec. 379).

Therefore, the decree of the lower court is affirmed.

AFFIRMED.