(No. 2307.    Oct. 25, 1919.)
## GONZALES v. ILFELD.

Rehearing Denied Jan. 12, 1920.

### SYLLABUS BY THE COURT

The rule that a person who mingles his goods with those of another forfeits his own goods does not apply where the act of commingling was not done willfully, with a fraudulent or other improper intent or purpose.

Appeal from District Court, San Miguel County; Leahy, Judge.

Replevin by Maximiana Gonzales against Pablo Gonzales, with intervention by Charles Ilfeld. Judgment for plaintiff, and intervener appeals. Reversed, with instructions.

### STATEMENT OF FACTS

In 1910 or 1911, the date not being material in this case, the appellee, Maximiana Gonzales, intrusted to her brother Pablo Gonzales, defendant in the court below, 544 sheep. These sheep belonged to her and were marked with her earmark. They were to be herded and

cared for by Pablo Gonzales for his sister, and were kept by him until the year 1917, except a large number of them which died and a few old ones that were sold.

On October 27, 1911, a contract was entered into between Mrs. Gonzales, appellee, Pablo Gonzales, her brother, and Charles Ilfeld, under which Ilfeld intrusted to them and delivered to Pablo Gonzales, on partido contract, 500 ewe sheep. It was provided by this contract that the sheep and their increase were marked and were to be marked with appellee's earmark, which earmark it is alleged in said contract belonged to the appellant, Ilfeld.

There is no proof that Charles Ilfeld had any knowledge that the earmark called for in the contract belonged to Mrs. Gonzales. The mark was unrecorded, but the proof showed that it had been used by Mrs. Gonzales and her deceased husband on their sheep for over 20 years. It was also provided in this contract that the earmark should be and remain the earmark of Charles Ilfeld.

At the time the present controversy arose all the original ewes had died or had been disposed of, and we are interested only in the increase, all of which were marked in accordance with the contract. These 500 sheep were placed in the same herd with the 544 sheep of Mrs. Gonzales, and as the old ones died and the increase from both herds were marked with the same earmark, it became impossible to distinguish the sheep belonging to Ilfeld from those belonging to Mrs. Gonzales.

On or about November 25, 1914, Charles Ilfeld intrusted to Pablo Gonzales and Vidal Urioste 468 more ewes, and Gonzales and Urioste agreed between themselves that Gonzales should take 168 and Urioste 300. The increase of these 168 had been marked by Gonzales with the earmark mentioned in the first contract. This marking had been done without the knowledge or consent

of either Mr. Ilfeld or Mrs. Gonzales. When these 168 head were placed in the herd there had already been large losses from the ewes then being run by Gonzales. There should have then been in the herd 1,044 head— the 544 he received from his sister, Mrs. Gonzales, plus the 500 that his sister received from Mr. Ilfeld. He had at this time however, only 714 head, and because of the identical earmarks it was then impossible to distinguish one from another. The mingling of the 468 made a total, together with the 714, of 1,182 then in the herd, of which, as the increase of the 168 were earmarked in the same manner, 882 came to have identical earmarks.

At this time the contract of 1911 between Charles Ilfeld, Pablo Gonzales, and Maximiana Gonzales was still in force, and continued in force until October 25, 1915, when it was superseded by a new contract between Charles Ilfeld, Pablo Gonzales, and Vidal Urioste covering the same sheep. Mrs. Gonzales and her brother were then short a considerable number of the Charles Ilfeld sheep and Pablo Gonzales testified in effect that his sister then authorized him to turn over to Mr. Ilfeld a total of 500 sheep from his herd in satisfaction of the 1911 contract, making up the shortage in the Ilfeld contract out of her part of the herd. The appellee, Mrs. Gonzales, denies that she authorized her brother to turn over any sheep to Ilfeld.

When the writ of replevin in this case was served, September 25, 1917, the whole herd consisted of 998 head, of which 544 had the joint earmark; these being all that were left of the 544 originally delivered to Mrs. Gonzales, the 500 of Charles Ilfeld, and the 168 last delivered by Mr. Ilfeld. Mrs. Gonzales commenced this replevin proceeding against her brother claiming that all these 544 head belonged to her. Charles Ilfeld intervened also alleging ownership. The district court decided that because of the mixture of these herds Charles Ilfeld lost his title to the sheep he had intrusted to Gonzales, the

exact language of the court, as expressed in finding No. 16, being that "as a result of the intermingling of said sheep as aforesaid the 500 head of sheep named in the contract of October 25, 1915, introduced in evidence as Intervener's Exhibit D, became the sheep of this plaintiff."

S. B. DAVIS, JR., and LOUIS C. ILFELD, both of Las Vegas, for appellant.

O. A. LARRAZOLO, of Las Vegas, and A. B. RENEHAN, of Santa Fe, for appellee.

### OPINION OF THE COURT

RAYNOLDS, J. (after stating the facts as above). The appellant assigns eight errors of the trial court, which may be considered in two general heads: First, that the court erred in holding that the appellee was not bound by her contract of 1911 with appellant, and in not holding thereby that both parties were equally negligent, and the sheep should have been apportioned between the parties in the proportion to their interests, and second that the appellant had forfeited his rights by allowing appellee's earmark to be placed on the sheep and their increase.

The fault with appellant's first contention is that the contract of 1911 was not the contract on which his right of action was based. It was not exhibited in the petition to intervene, and over objection of the appellee it was expressly admitted for the purpose of "tracing the earmark," and for no other purpose, as was stated by appellant in offering it in evidence. No rights were apparently claimed under it, but the subsequent contract of October 25, 1915, was the basis of the action whereby 500 ewes marked with appellee's earmark were turned over to Gonzales. Appellant's own witnesses testified that the earmark in question was not the earmark of appellant, but of appellee.

We agree with the trial court in its finding that it was through the fault and negligence of the appellant that the sheep in question were so marked and commingled as to render their identification impossible. His acts led to the confusion of the goods, but it is urged upon us that appellant's acts, although negligent, were in no sense fraudulent nor wrongful, and that he should not be made to forfeit his property when the elements of willful, fraudulent, and wrongful commingling of the property are absent. We think this position well taken.

"Par. 3. Where one fraudulently, willfully, or wrongly intermingles his goods with those of another, so that there is no evidence to distinguish the goods of the one from those of the other, the wrongdoer forfeits all his interest in the mixture to the other party; in other words he cannot recover for his own proportion, or for any part of the intermixture, but the entire property vests in him whose right is invaded. However the rule that a wrongful or fraudulent confusion of goods works a forfeiture of the interest of the wrongdoer in the mixture is adopted solely to prevent fraud, and will not be extended further than that object requires; it is never resorted to, except in favor of an innocent party as against a wrongdoer."

"Par. 4. The rule that a person who mingles his goods with those of another person forfeits his own goods does not apply where the act was not done willfully, with a fraudulent or other improper intent or purpose. In such case he should be protected in his ownership so far as the circumstances permit."

12 C. J. p. 491.

See, also, note to Ayre v. Hixson, 53 Or. 19, 98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E at page 669.

We therefore hold that the court should have permitted appellant to recover his proportionate share of the sheep marked with appellee's earmark, as there was no willful wrong nor fraud imputed to the appellant shown by the evidence nor found by the court in its findings. The case is therefore reversed with instructions to enter judgment awarding the intervener his

proportionate share of the sheep, that is, 314, and the appellee her proportionate share of the sheep, that is, 230; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.